UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALAN PACELLA, Individually and on behalf  :
of all others similarly situated,

                               :

              Plaintiff,     :

                               :

        - against -      :      1:24-cv-00876-CM

                               :

HESAI GROUP, YIFAN LI, LOUIS T.     :      **Oral Argument Requested**
HSIEH, KAI SUN, SHAOQING XIANG,   :
CAILIAN YANG, COLLEEN A. DEVRIES,  :
GOLDMAN SACHS (ASIA) L.L.C.,     :
MORGAN STANLEY ASIA LIMITED,     :
CREDIT SUISSE SECURITIES (USA) LLC,  :
HUATAI SECURITIES (USA), INC.,     :
COGENCY GLOBAL, INC.,         :

                               :

             Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT

| | |
|---|---|
| O'MELVENY & MYERS LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| Jonathan Rosenberg | |
| Abby F. Rudzin | Scott D. Musoff |
| 1301 Avenue of the Americas, Suite 1700 | Robert A. Fumerton |
| New York, NY 10019 | Michael C. Griffin |
| Telephone: (212) 326-2000 | One Manhattan West |
| | New York, New York 10001 |
| *Counsel for Defendants Goldman Sachs* | Telephone: (212) 735-3000 |
| *(Asia) L.L.C., Morgan Stanley Asia Limited,* | |
| *Credit Suisse Securities (USA) LLC, and* | *Counsel for Hesai Group, Cogency Global,* |
| *Huatai Securities (USA), Inc.* | *Inc., and Colleen A. DeVries* |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................3

I.   BACKGROUND ........................................................................................................3

II.  HESAI'S IPO DISCLOSURES...............................................................................4

    A.  Hesai Discloses Risks Relating to the Decrease in Gross Margin
        Resulting From the Shift of Product Mix Toward the ADAS Market..........................4

    B.  Hesai Discloses Regulatory Risks Relating to Enhanced Trade Restrictions...............6

III. POST-IPO DEVELOPMENTS ...............................................................................8

    A.  Hesai Announces Q4 2022 and FY 2022 Financial Results .........................................8

    B.  Nearly a Year After the IPO, Hesai Is Named to the DoD's 1260H List ......................9

    C.  A Short Seller Publishes a Meritless Attack on Hesai...............................................11

ARGUMENT .....................................................................................................................12

I.   PLAINTIFF FAILS TO PLEAD ANY MISSTATEMENT OR OMISSION........................12

    A.  No Material Misstatement or Omission Regarding Gross Margin .............................12

        1.  The Offering Documents Disclosed Hesai's
            Declining Gross Margins and the Cause Thereof .........................................12

        2.  No Additional Disclosure Was Required Under Item 5(D) or Item 303 ......... 14

        3.  Hesai Had No Duty To Disclose Q4 Results in the Offering Documents ...... 17

    B.  No Material Misstatement or Omission Regarding the 1260H List ............................18

        1.  Hesai Adequately Disclosed the Prospect of
            Enhanced Trade Restrictions and the Associated Risks................................. 18

        2.  Hesai Had No Duty To Disclose a DoD-Specific Risk
            Because It Had Not Materialized at the Time of the IPO .............................. 20

II.  PLAINTIFF'S 1260H LIST CLAIM IS TIME-BARRED.......................................................23

III. PLAINTIFF LACKS STANDING FOR HIS SECTION 12(A)(2) CLAIM..........................24

CONCLUSION...................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Asay v. Pinduoduo Inc.*,
No. 18-cv-7625 (PKC), 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020), *aff'd*, No.
20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ...............................................15, 17

*Asay v. Pinduoduo Inc.*,
No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ..........................................14, 17

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................................................................................3

*In re Bank of America AIG Disclosure Securities Litigation*,
980 F. Supp. 2d 564 (S.D.N.Y 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014)...................18

*Bettis v. Aixtron SE*,
No. 16 Civ. 00025 (CM), 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016).........................23

*Caiafa v. Sea Containers Ltd.*,
331 F. App'x 14 (2d Cir. 2009) .........................................................................................24

*Caldwell v. Berlind*,
543 F. App'x 37 (2d Cir. 2013) .........................................................................................23

*In re EHang Holdings Ltd. Securities Litigation*,
646 F. Supp. 3d 443 (S.D.N.Y. 2022)...............................................................................15

*Garnett v. RLX Technology Inc.*,
632 F. Supp. 3d 574 (S.D.N.Y. 2022), *aff'd sub nom. Tseng v. De Vries*, No. 22-
2787-CV, 2023 WL 8073087 (2d Cir. Nov. 21, 2023)................................................19, 22

*In re Global Crossing, Ltd. Securities Litigation*,
No. 02 CIV. 910 (GEL), 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005)............................24

*Grossman v. Sin*,
No. 2:23-cv-09501-MRA-MAA, 2025 WL 1330087 (C.D. Cal. Mar. 31, 2025) .............22

*In re HEXO Corp. Securities Litigation*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021).................................................................................24

*Hutchison v. Deutsche Bank Securities Inc.*,
647 F.3d 479 (2d Cir. 2011)...............................................................................................24

*In re Keyspan Corp. Securities Litigation*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...............................................................................12

*Kwalbrun v. Glenayre Technologies, Inc.*,
201 F.3d 431 (2d Cir. 1999)..................................................................................20

*In re Merrill Lynch & Co.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd sub nom. Lentell v. Merrill Lynch &
Co.*, 396 F.3d 161 (2d Cir. 2005)............................................................................3

*Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)....................................................................21

*In re Morgan Stanley Information Fund Securities Litigation*,
592 F.3d 347 (2d Cir. 2010)............................................................................12, 22

*In re N2K, Inc. Securities Litigation*,
82 F. Supp. 2d 204 (S.D.N.Y.), *aff'd*, 202 F.3d 81 (2d Cir. 2000)......................18

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
98 F.3d 2 (2d Cir. 1996)..................................................................................16, 18

*Panther Partners, Inc. v. Ikanos Communications, Inc.*,
538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009)................20

*Pew v. Cardarelli*,
164 F. App'x 41 (2d Cir. 2006) ..............................................................................23

*In re Rockwell Medical, Inc. Securities Litigation*,
No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...............15

*Rudman v. CHC Group Ltd.*,
217 F. Supp. 3d 718 (S.D.N.Y. 2016)....................................................................17

*Sandoz v. Waterdrop Inc.*,
No. 21cv7683 (DLC), 2023 WL 1767526 (S.D.N.Y. Feb. 3, 2023), *aff'd sub nom.
Mi v. Waterdrop Inc.*, No. 23-301, 2024 WL 159191 (2d Cir. Jan. 16, 2024) ..................17

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017).....................................................................................19

*Stadnick v. Vivint Solar, Inc.*,
No. 14-CV-9283 (KBF), 2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861
F.3d 31 (2d Cir. 2017).............................................................................................24

*In re TVIX Securities Litigation*,
25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v. Credit
Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) .........................................................13, 16, 17

**STATUTES**

15 U.S.C. § 77m..............................................................................................................23

2021 National Defense Authorization Act, Pub. L. No. 116-283, § 1260H, 134
    Stat. 3388 (2021)...............................................................................................9, 20, 21

**REGULATIONS**

17 C.F.R. § 210.3-12(a), (g)(1)(ii) ...............................................................................17

Defendants Hesai Group ("Hesai" or the "Company"), Goldman Sachs (Asia) L.L.C., Morgan Stanley Asia Limited, Credit Suisse Securities (USA) LLC, Huatai Securities (USA), Inc., Cogency Global, Inc., and Colleen A. DeVries (collectively, "Defendants")[1] respectfully submit this memorandum of law in support of their joint motion to dismiss the Amended Complaint (the "Complaint" or "AC") (ECF No. 33)[2] pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This putative securities class action should be dismissed because Defendants disclosed the information Plaintiff claims was omitted and warned of the risks that eventually materialized nearly a year after Hesai's initial public offering ("IPO"). Hesai is a global leader in three-dimensional light detection and ranging ("LiDAR") solutions, with operations primarily in China. Hesai serves a broad customer base that includes leading commercial vehicle manufacturers in the U.S., Europe, and China. In July 2022, months before its February 2023 IPO, Hesai expanded its product mix—which had historically focused on the autonomous mobility (self-driving technology) market—by launching high-volume but low-margin shipments of products for vehicles with advanced driver assistance systems ("ADAS"). By the end of 2022, Hesai had shipped 62,000 LiDAR units to the global ADAS market, with plans to increase shipments and launch a new ADAS LiDAR product line in 2023. As Hesai repeatedly disclosed in its IPO Prospectus and Registration Statement (together, the "Offering Documents"), this shift in product mix significantly decreased its overall gross margin, which Hesai expected to further decline as ADAS

---

[1]  To Defendants' knowledge, none of the other individual defendants has been served.

[2]  A true and correct copy of the AC is attached as Exhibit A to the Declaration of Michael C. Griffin, dated December 29, 2025, exhibits to which are otherwise cited herein as "Ex._." Pincites for all exhibits reference the original pagination at the bottom of the page. All internal quotation marks and citations are omitted, and all emphases are added, unless otherwise noted.

shipments increased in the coming year.  So when Hesai released its first post-IPO earnings in March 2023, no investor should have been surprised that gross margin had decreased due to increased shipments of ADAS products—exactly as the Offering Documents warned.

Nevertheless, shareholders initiated this Action in April 2023, alleging Defendants omitted material information about Hesai's gross margins in violation of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").  In November 2025, Plaintiff filed the Amended Complaint, which admits the gross margin trends were disclosed but contends more details should have been provided.  Plaintiff also adds a new, unrelated claim regarding a ***post-IPO*** regulatory action by the U.S. Department of Defense (the "DoD") to place Hesai on its 1260H List—a list of "Chinese military companies"—a designation that Hesai is currently challenging in a separate action against the DoD.  For multiple independent reasons, both theories fail as a matter of law.

First, Plaintiff fails to plead any material misstatement or omission, which dooms all of his claims.  As Plaintiff acknowledges, the Offering Documents disclosed that Hesai's shift toward the ADAS market caused an ongoing decrease in its gross margin that was expected to continue as shipments increased in 2023.  Nothing about that disclosure was false or misleading, and Hesai had no duty to disclose any further detail about the disclosed trend.  Separately, the Offering Documents also disclosed the risks of rising geopolitical tensions between the U.S. and China, including specifically that Hesai could be subject to further trade restrictions that could harm its business and customer relationships.  This encompasses the risk that eventually materialized ***nearly a year after the IPO***, when the DoD put Hesai on the 1260H List.  Plaintiff alleges no facts showing Hesai could have foreseen this particular regulatory action at the time of the IPO in February 2023.  Even the DoD admits its determination in 2024 was premised on "a new record based on the latest information available."  The Company has consistently maintained that its

products are designed for commercial use only (not military use).  Plaintiff's claim that Hesai should have predicted the impact of this designation on its customer relationships likewise fails, as the relevant portion of the law was not even introduced, let alone enacted, until ***after the IPO***.

Second, Plaintiff's claim about the 1260H List is also time-barred.  Hesai was placed on the list in January 2024, but Plaintiff did not bring this claim until November 2025, well past the one-year Securities Act limitations period.  This new claim does not relate back to the original complaint because it has nothing to do with the original gross margin claim.

Finally, Plaintiff lacks standing for his Section 12(a)(2) claim.  Plaintiff fails to allege that he purchased shares directly in the IPO, and his lead plaintiff certification confirms that he did not.

## STATEMENT OF FACTS[3]

### I.    BACKGROUND

Hesai is a global leader in three-dimensional LiDAR solutions.  (AC ¶ 4; Ex. B, Prospectus at 1.)  Its LiDAR products have broad application across: (i) passenger or commercial vehicles with ADAS; (ii) autonomous vehicle fleets providing self-driving passenger and freight mobility services ("Autonomous Mobility"); and (iii) various robots ("Robotics").  (*Id.* at 1; *see* AC ¶ 4.)  Hesai experienced significant growth since its founding in 2014 and was the global leader (by revenue) for LiDAR products in the Autonomous Mobility market by 2021, according to Frost & Sullivan, an independent market research company.  (Ex. B, Prospectus at 1.)  In July 2022, Hesai began volume shipments of LiDAR products for the ADAS market, and by the end of 2022, it had shipped approximately 62,000 ADAS units.  (*Id.*)  As of the IPO in February 2023, Hesai offered

---

[3]    The facts set forth herein are drawn from allegations in the AC, documents incorporated by reference or integral to the AC, and matters of which judicial notice may be taken.  *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005).  The Court may also consider "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

only one ADAS product, the AT128 model under its AT series.  (AC ¶ 55.)  A second ADAS product line, the FT series, was planned to launch and ship in 2023.  (AC ¶ 97.)

## II.   HESAI'S IPO DISCLOSURES

### A.   Hesai Discloses Risks Relating to the Decrease in Gross Margin Resulting From the Shift of Product Mix Toward the ADAS Market

Hesai launched its IPO on the Nasdaq on February 9, 2023, pricing its shares at $19 per ADS.  The Offering Documents fully and accurately disclosed the Company's historical financial performance, including its overall gross margin, which was 70.3%, 57.5%, 53.0% and 44.0% in 2019, 2020, 2021 and the nine months ended September 30, 2022, respectively.  (Ex. B, Prospectus at 78.)  Hesai expressly disclosed that the decline in gross margin between 2021 and 2022 was "*primarily due to the increased sales of LiDAR units that have lower margins*."  (*Id.* at 86.)

Hesai's gross margin was also disclosed in its consolidated financial statements (the % columns in the bottom row):

| | For the Year Ended December 31, | | | | | | For the Nine Months Ended September 30, | | | | |
| | 2019 | | 2020 | | 2021 | | | 2021 | | 2022 | | |
| | RMB | % | RMB | % | RMB | US$ | % | RMB | % | RMB | US$ | % |
| | (in thousands, except for percentage data) | | | | | | | | | | | |
| Net revenues | 348,084 | 100.0 | 415,514 | 100.0 | 720,768 | 101,324 | 100.0 | 459,442 | 100.0 | 793,485 | 111,546 | 100.0 |
| Cost of revenues | (103,377) | (29.7) | (176,600) | (42.5) | (338,972) | (47,652) | (47.0) | (214,671) | (46.7) | (444,339) | (62,464) | (56.0) |
| Gross profit | 244,707 | 70.3 | 238,914 | 57.5 | 381,796 | 53,672 | 53.0 | 244,771 | 53.3 | 349,146 | 49,082 | 44.0 |

(*Id.* at 85.)  The Offering Documents also disclosed quarterly results for Q1 2021 through Q3 2022, including net revenues and cost of revenues:

| | For the Three Months Ended, | | | | | | |
| | March 31, 2021 | June 30, 2021 | September 30, 2021 | December 31, 2021 | March 31, 2022 | June 30, 2022 | September 30, 2022 |
| | (RMB in thousands) | | | | | | |
| Total net revenues | 100,761 | 134,237 | 224,444 | 261,326 | 248,447 | 211,184 | 333,854 |
| Cost of revenues | (38,304) | (62,178) | (114,189) | (124,301) | (121,953) | (112,259) | (210,127) |
| Gross profit | 62,457 | 72,059 | 110,255 | 137,025 | 126,494 | 98,925 | 123,727 |

(*Id.* at 90.)

Although the Offering Documents did not specifically report quarterly gross margin, investors could easily calculate it from the disclosed data (net revenues minus cost of revenues, divided by net revenues):

| | Q1 2021 | Q2 2021 | Q3 2021 | Q4 2021 | Q1 2022 | Q2 2022 | Q3 2022 |
|---|---|---|---|---|---|---|---|
| **Gross margin** | 61.99% | 53.68% | 49.12% | 52.43% | 50.91% | 46.84% | 37.06% |

The Offering Documents also alerted investors to ongoing adverse financial trends, including that the Company "***expects its gross margin to further decrease in the fourth quarter of 2022 as it shifts its product mix toward LiDAR products for the ADAS market***." (*Id.* at 78.)

Hesai disclosed that its gross margin was impacted by its product mix, including by increasing sales to the ADAS market, for which it planned to launch new models in 2023:

> Our LiDAR products for the Autonomous Mobility market include the Pandar series for long-range detection and the QT series for blind-spot detection. The XT series, shipped in volume in 2022, is our ASIC-based LiDAR product line for the Robotics market, and the AT series and the FT series are our LiDAR product lines for the ADAS market, which have been shipped in volume in 2022 and are expected to ship in 2023, respectively. ***As we offer a diverse set of LiDAR products, our gross margin is affected by the pricing and mix of our products***. In 2019, 2020, 2021, and the nine months ended September 30, 2021 and 2022, the average selling price of our LiDAR units was approximately US$17,400, US$12,700, US$7,700, US$8,000 and US$3,100, respectively. During the same periods, the percentage of revenues generated from the Pandar series (including Pardar128, Pandar64, Pandar40 and other Pandar LiDARs) was 94.1%, 75.2%, 76.8%, 78.7% and 57.5%, respectively. ***Our gross margin decreased from 70.3% in 2019 to 57.5% in 2020, and further decreased to 53.0% in 2021. Our gross margin decreased from 53.3% in the nine months ended September 30, 2021 to 44.0% in the nine months ended September 30, 2022.*** (*Id.* at 80.)

The Offering Documents also made clear that the trend of decreasing gross margin would continue due to increasing shipments of LiDAR units for the ADAS market:

> ***We expect the average selling price for our LiDAR units and our gross margin to decrease as our shipment volume increases, especially with the increasing shipment of LiDAR units for the ADAS market and LiDAR units shipped to the United States that incur higher tariffs.*** The LiDAR products for the ADAS market generally have much lower selling prices than the LiDAR products for the

Autonomous Mobility market, and our changes in product mix that now starts to focus more on the LiDAR products for the ADAS market will decrease our average selling price.  (*Id*.)

Finally, Hesai cautioned investors that its "***historical results are not necessarily indicative of results expected for future periods***" (*id.* at 17), and warned that its ability to forecast revenue and profitability was subject to significant uncertainty due to the Company's limited operating history, rapidly evolving markets, and the nascent stage of LiDAR adoption (*id.* at 20, 24-25).

### B.    Hesai Discloses Regulatory Risks Relating to Enhanced Trade Restrictions

The Offering Documents also included extensive disclosures about existing and future trade restrictions.  For example, Hesai disclosed risks associated with U.S. trade restrictions:

Although we are a primarily China-based company, we have operations in the U.S. and many of our major customers and suppliers are located in the U.S. and other countries outside of China.  In addition, ***certain of our technologies, such as technologies relating to autonomous driving applications, could be subject to restrictions by the U.S. government in the future.***  Therefore, government policies restricting international trade and investment, such as capital controls, economic or trade sanctions, export controls, tariffs or foreign investment filings and approvals, may affect the demand for our products and services, impact the competitive position of our products, or prevent us from being able to sell products in certain countries.  ***If any new tariffs, legislation, or regulations are implemented (including those imposing economic or trade sanctions, export control restrictions or outbound investments restrictions), or if existing trade agreements are renegotiated, such changes could adversely affect our business, financial condition, and results of operation.***  (*Id.* at 29-30.)

The Offering Documents repeatedly highlighted increasing tensions between the U.S. and China.  They detailed at length various recent trade-related actions undertaken by the U.S. and Chinese governments (*see* AC ¶ 110), which made clear that trade restrictions and geopolitical tensions were uncertain and quickly evolving, all of which could adversely impact its business:

Recently, there have been heightened tensions in international economic relations, such as that between the United States and China . . . .  The U.S. government has imposed, and has proposed to impose additional, new, or higher tariffs on certain products imported from China to penalize China for what it characterizes as unfair trade practices.  China has responded by imposing, and proposing to impose additional, new, or higher tariffs on certain products imported from the United

6

States. . . . ***In addition, the U.S. government has issued new rules that expanded the definition of military end use*** and eliminated the applicability of certain license exceptions for exports to countries including China . . . . ***Rising political tensions could reduce levels of trade, investment, technological exchange, and other economic activities between the two major economies***, which would have a material adverse effect on global economic conditions and the stability of global financial markets. ***Any of these factors could have a material adverse effect on our and our customers' business, prospects, financial condition, and results of operations.*** (Ex. B, Prospectus at 30-31.)

The Offering Documents also warned that the escalation of U.S.-China tensions could impact Hesai's ability to sell to both existing and new customers:

***The current international trade tensions and political tensions between the United States and China, and any escalation of such tensions, may have a material negative impact on*** our ability to secure the supply of raw materials and key components necessary for our operations and ***our ability to continue to sell to global customers and further grow our customer base***. For example, while we are not currently affected by the Entity List or other U.S. export control laws or regulations in any material respect, ***as the Entity List and other U.S. export control laws and regulations continue to expand and evolve, future U.S. export controls may materially affect or target some of our significant suppliers or customers, in which event our business may be affected*** . . . . ***Our business, financial condition, and results of operations may be significantly affected by the continued international trade and political tensions.*** (*Id*. at 31.)

The Offering Documents further cautioned that the Company could be accused of violating economic and trade sanctions and export control laws, and that it could not guarantee its global compliance efforts would be effective:

***Our global operations expose us to the risk of violating, or being accused of violating economic and trade sanctions and export control laws and regulations. Despite our compliance efforts and activities, there is no assurance that such efforts and activities are effective*** and we cannot assure compliance by our employees or representatives for which we may be held responsible. (*Id.* at 31-32.)

Lastly, the Offering Documents disclosed that Hesai is "***dependent on a collection of large customers with strong purchasing power***," including "***one customer, a leading global OEM headquartered in the United States, [that] accounted for 23.6%, 10.4%, 17.5%, 10.7% and 10.1% of our revenue***," in 2019, 2020, 2021 and the nine months ended September 30, 2021 and 2022.

Hesai highlighted that it could lose these major customers if any "events occur that may adversely affect our ability to perform our contractual obligations," and that "*[t]he loss of business from any of our major customers* (whether by lower overall demand for our products, cancellation of existing contracts or product orders or the failure to award us new business) *could have a material adverse effect on our business and results of operations*." (*Id.* at 39.)

### III.    POST-IPO DEVELOPMENTS

####    A.    Hesai Announces Q4 2022 and FY 2022 Financial Results

On March 16, 2023, the Company announced its financial results for Q4 2022 and FY 2022. (Ex. C, Mar. 2023 Form 6-K.)  Hesai reported that its gross margin was 30.0% for Q4 2022, compared with 52.4% for the same period of 2021, and its gross margin was 39.2% for FY 2022, compared with 53.0% for the prior year. (*Id.* at 1.)  Hesai's then-CFO noted that the 39.2% gross margin for FY 2022 was nonetheless "the highest among [its] industry peers." (*Id*. at 2.)  As it previewed in the Offering Documents, the Company attributed the decrease in gross margin "mainly . . . to the increased shipments of lower-margin ADAS LiDAR products during the early ramp-up stage with lower in-house plant capacity utilization rate." (*Id*. at 3, 5.)  Hesai also reported net revenues of RMB1,202.7 million (US$174.4 million) for FY 2022, representing a 66.9% increase from the prior year, and a net loss of RMB300.8 million (US$54.8 million) for FY 2022, representing a 22.8% increase from the prior year. (*Id*. at 5)

During an earnings call the same day, the Company's then-CFO explained that "2023 is a transition year for Hesai as we migrate from traditionally higher margin autonomous mobility of Pandar, XT and QT to the exploding but relative structurally lower margins ADAS sales of AT and FT." (Ex. D, Mar. 2023 Earnings Call Tr. at 4.)  While the average selling price for Autonomous Mobility "has been over USD5,000, with approximately 50% gross margin," the

average selling price for ADAS "is expected to be around USD500 . . . by year[-]end." (*Id.*) Gross margin for ADAS "was less than 5%" in 2022, and the Company disclosed that "[b]y the end of" 2023, it "expect[ed] the gross margin to be in the high single-digits to low double-digits, so probably 9% to 13% as we exit this year." (*Id.* at 12; AC ¶ 137.) Nonetheless, Hesai's "long-term gross margin target remains unchanged at 35%," where it has "autonomous mobility at between 45% and 50%, and ADAS . . . with the target [of] 30% or so," so "[t]hat blended number [of ADAS and Autonomous Mobility margins] should come out to 35%." (*Id.*) That day, Hesai's ADS price dropped 10.17% from the prior day's close of $15.24 to close at $13.69.

### B.      Nearly a Year After the IPO, Hesai Is Named to the DoD's 1260H List

Section 1260H of the 2021 National Defense Authorization Act (the "NDAA") (AC ¶ 142) authorizes the DoD to designate any entity that, "based on the most recent information available, is operating directly or indirectly in the United States . . . that is a Chinese military company." Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-66 (2021).  An entity may be designated a "Chinese military company" if it is "identified as a military-civil fusion contributor to the Chinese defense industrial base." *Id.*  A "military-civil fusion contributor" includes "entities residing in or affiliated with a military-civil fusion enterprise zone." *Id.*  The law, however, does not define "military-civil fusion enterprise zone," nor does it list such designated zones.  On December 22, 2023—***more than ten months after the IPO***—the NDAA was amended to prohibit the DoD from contracting with 1260H entities. (Ex. E, NDAA Amend. § 805.)  Under that amendment, the DoD will be prohibited, starting from June 30, 2026, from entering into contracts with 1260H entities or their controlled affiliates for the procurement of goods, services or technology. (AC ¶ 74.)  And starting from June 30, 2027, the DoD will be prohibited from contracting with third parties to indirectly purchase goods or services produced or developed by 1260H Entities. (*Id.*)

9

On January 31, 2024—*nearly a year after* Hesai's February 2023 IPO—the DoD placed Hesai, along with 45 other companies, on the 1260H List (AC ¶ 142), apparently in reliance on a DoD memorandum dated November 2, 2023 (also long after the IPO), in which the DoD concluded that Hesai met the definition of a "Chinese military company" because it is a "military-civil fusion contributor" by virtue of its "affiliation" with China's Ministry of Industry and Information Technology ("Chinese MIIT").  (Ex. F, DoD 2023 Memorandum.)  Hesai immediately issued a public response, stating that it believed "this inclusion is unjust, capricious, and meritless."  (Ex. G, Jan. 31 2024 Hesai Statement on the DoD Listing.)  Hesai's ADS price dropped 31.05% from $5.83 on January 31, 2024, to close at $4.02 on February 1, 2024.  (AC ¶ 143.)

On March 11, 2024, Hesai announced its unaudited financial results for Q4 2023 and FY 2023.  The Company's Co-Founder and CEO stressed that "[w]e firmly believe this [1260H] designation is unjust and capricious and are actively challenging it through legal channels."  (Ex. H, Mar. 2024 6-K at 2.)  He reiterated that Hesai's LiDAR products "are designed for civilian commercial use only[,] . . . do not meet military specifications and . . . are incapable of collecting or transmitting surveillance data."  (*Id.*)  He confirmed that "Hesai operates independently of governmental ownership or control of any country, including China."  (*Id.*)

On May 13, 2024, Hesai filed a lawsuit against the DoD, seeking to be removed from the 1260H List.  *See* Complaint, *Hesai Tech. Co. et al. v. U.S. Dep't of Def. et al.*, No. 1:24-cv-1381-PLF (D.D.C. filed May 13, 2024); (AC ¶ 155).  In the subsequent months, Hesai continued to object to its inclusion on the 1260H List—which it admitted had harmed its business—and consistently denied any connection or affiliations with any military.  (*See* Ex. I, May 2024 Earnings Call Tr. at 10-11; Ex. J, Aug. 2024 Earnings Call Tr. at 6.)

On October 21, 2024, the DoD removed Hesai from the 1260H List, but relisted Hesai the

10

same day (AC ¶ 156), "based on the latest information available." (Ex. K, Oct. 24, 2024 Federal Register.) Relying on an updated memorandum dated September 17, 2024, the DoD asserted the following grounds for relisting Hesai: (1) Hesai "knowingly receiv[es] assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus"; (2) Hesai is "affiliated with the Chinese [MIIT]"; (3) Hesai "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone or receiv[es] assistance from the Government of China through such enterprise zone"; and (4) Hesai "advertise[s] on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China." (AC ¶ 156; Ex. L, DoD 2024 Hesai Memorandum at 5; Ex. M, DoD Brief at 6.) On this basis, the DoD deemed Hesai a "military-civil fusion contributor." (AC ¶ 156.) Notably, the September 2024 memorandum was the first time the DoD took the position that (i) the Jiading Industrial Zone and Chongqing Economic Development Zone are "military-civil fusion enterprise zones"; and (ii) Hesai's activities in those zones is a basis for its placement on the 1260H List.

On July 11, 2025, U.S. District Judge Paul L. Friedman denied Hesai's motion for summary judgment and granted the DoD's cross-motion for summary judgment. (AC ¶ 157.) Hesai filed a notice of appeal two days later and filed its Appellant Brief on December 3, 2025. *See Hesai Tech. Co. et al. v. DOD et al.*, No. 25-5256 (D.C. Cir.).

### C.    A Short Seller Publishes a Meritless Attack on Hesai

On March 18, 2025, before summary judgment in Hesai's litigation with the DoD, Blue Orca Capital published a short-seller report against Hesai (the "Blue Orca Report"), making a slew of allegations, including that Hesai's LiDAR products were being used on Chinese military vehicles and that Hesai's inclusion on the 1260H List could jeopardize its business with major U.S. customers. (Ex. O, Blue Orca Report at 1-2.) Notably, Blue Orca Capital acknowledged its

inherent bias as a short seller:

> ***We are short sellers.  We are biased** . . . .  **You are reading a short-biased opinion piece.  Obviously, we will make money if the price of Hesai stock declines**.  (Id. at 37.)*

After the release of the Blue Orca Report, Hesai's ADS price fell by 7.8% from $22.30 on March 17, 2025, to close at $20.56 on March 18, 2025.

On March 19, 2025, Hesai filed a Form 6-K with the SEC announcing that it "strongly disagrees with the allegations in the [Blue Orca] report and believes that the report is without merit." (Ex. P, Mar. 2025 Form 6-K.)  Hesai's ADS price increased slightly that day.

## ARGUMENT

## I.   PLAINTIFF FAILS TO PLEAD ANY MISSTATEMENT OR OMISSION

To state a Securities Act claim, Plaintiff must plead facts showing the Offering Documents "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010).  Plaintiff alleges two unrelated omissions from the Offering Documents: (i) "the true source and extent of Hesai's significant decrease in gross margin"; and (ii) the "risk that Hesai could be named to [the 1260H List]."  (AC ¶ 12.)  Both claims fail as a matter of law.

### A.   No Material Misstatement or Omission Regarding Gross Margin

#### 1.   The Offering Documents Disclosed Hesai's Declining Gross Margins and the Cause Thereof

"Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003).  Plaintiff's claims regarding gross margin fail because the Offering Documents disclosed the allegedly omitted information.

Contrary to Plaintiff's claim that "[t]he Offering Documents repeatedly touted Hesai's outstanding historical margins as a major selling point" while "omitt[ing] critical information that told a very different story" (AC ¶¶ 5-6, 94), Hesai disclosed that its gross margin was **decreasing** due to its shift in product mix toward the ADAS market. As the Complaint admits, although Hesai's gross margins exceeded 50% between 2019 and 2021, the Offering Documents disclosed that Hesai's gross margin had decreased to 44.0% in the nine months ended September 30, 2022 (AC ¶¶ 95, 97), a significant decrease from 53.3% for the same period in 2021, "**primarily due to the increased sales of LiDAR units that have lower margins**" (*id.* ¶ 101). Plaintiff claims this disclosure was itself misleading because the Offering Documents used the "identical language in the context of the decrease in gross margin between 2020 and 2021," and thus both statements "could only have referred to Hesai selling relatively lower-margin Autonomous Mobility LiDAR units." (*Id.* ¶¶ 101-02.) But Plaintiff ignores repeated disclosures that the shift toward ADAS products, which began in July 2022, was causing a decrease in gross margin, providing the necessary context to understand that the statements about 2022 gross margins included the impact of more ADAS product sales. *See In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 455 (S.D.N.Y.) ("In determining whether the statements . . . are materially misleading, the [Offering Documents] must be read as a whole."), *aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014).

For example, Hesai warned that it "expects its gross margin to further decrease in the fourth quarter of 2022 as it **shifts its product mix toward LiDAR products for the ADAS market**." (AC ¶ 95.) Hesai further warned that it "expects . . . [its] gross margin to decrease as [its] shipment volume increases, **especially with the increasing shipment of LiDAR units for the ADAS market**

13

and LiDAR units shipped to the United States that incur higher tariffs."[4]  (AC ¶ 97.)  These disclosures—which unambiguously tied the decrease in growth margin to the shift towards ADAS products—eviscerate Plaintiff's core claim that Hesai omitted the "principal reason that had already caused Hesai's gross margin to substantially decline."  (AC ¶¶ 96, 98, 100.)

Further refuting Plaintiff's theory is the quarterly breakdown provided in the Offering Documents of net revenues, cost of revenues and gross profit—data from which an investor could easily calculate the gross margin for each quarter from Q1 2021 to Q3 2022.  (Ex. B, Prospectus at 90.)  By subtracting cost of revenues from total net revenues, and dividing that amount by total net revenues, investors could readily see that gross margin continued to decline quarterly:

|  | Q1 2021 | Q2 2021 | Q3 2021 | Q4 2021 | Q1 2022 | Q2 2022 | Q3 2022 |
|---|---|---|---|---|---|---|---|
| **Gross margin** | 61.99% | 53.68% | 49.12% | 52.43% | 50.91% | 46.84% | 37.06% |

Any investor "could have looked at the data provided and understood" that in the two quarters since Hesai started volume shipments of ADAS products, its gross margin decreased significantly, from 50.91% in Q1 2022—before Hesai began volume shipments of ADAS products in July 2022—to 37.06% in Q3 2022. *Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *4 (2d Cir. Aug. 31, 2021) (affirming dismissal of Securities Act claims as company disclosed relevant information in cautionary statements accompanied by financial data).

### 2.    No Additional Disclosure Was Required Under Item 5(D) or Item 303

The Offering Documents' disclosure of known trends in gross margin resulting from the Company's product shift toward the ADAS market precludes Plaintiff from pleading a violation

---

[4]   Plaintiff argues this disclosure "misleadingly attributed the predicted decline in gross margin to the 'much lower selling prices.'"  (AC ¶ 98.)  But that is not what the disclosure says.  It explicitly attributes the decrease in gross margin to increasing shipments of LiDAR products and units shipped to the U.S.  (AC ¶ 97.)  The discussion of lower selling prices appears in a separate sentence regarding the impact of ADAS on Hesai's "average selling price."  (*Id.*)

of Item 5(D) of Form 20-F or Item 303 of Regulation S-K.  (AC ¶¶ 115-18.)  His attempt to characterize one cherry-picked disclosure as misleadingly "hypothetical" (AC ¶¶ 99-100) ignores the statements quoted above disclosing the preexisting, ongoing, and expected decrease in Hesai's gross margin.  *See Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at *7 (S.D.N.Y. Mar. 30, 2020) (defendant adequately warned of materialized risk because "[r]ead in its surrounding context, the language that plaintiffs claim to be misleading was a qualified statement . . . and appears amid disclosures about historical and potential liabilities"), *aff'd*, 2021 WL 3871269.  To the extent Plaintiff challenges Hesai's statements about its "industry-leading gross margin" and "global leadership," these are inactionable statements of puffery.  *See In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 462 (S.D.N.Y. 2022) (claims of being "industry leading" and "first in the world" are "too vague for a reasonable investor to rely upon").

Unable to deny these robust and accurate disclosures, Plaintiff argues Hesai should have provided more detail by breaking down gross margin by product type.  But Plaintiff alleges no duty to disclose such granular information.  "[I]t is well settled that 'a corporation is not required to reveal all facts on a subject just because it reveals a single fact.'"  *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *10 (S.D.N.Y. Mar. 30, 2018).  Moreover, the margin disparity between ADAS and Autonomous Mobility products was merely a factor contributing to the declining gross margin trend, not a trend itself.  Where, as here, the allegedly omitted information was "consistent with the trend disclosed by the Company, and the Complaint does not explain how further disclosure would have significantly altered the total mix of information available," no further disclosure was required.  *Asay*, 2020 WL 1530745, at *10.

Still, Plaintiff contends that Hesai's "gross margins for its ADAS products . . . were an order of magnitude lower than its autonomous mobility products," and that "[f]ailing to disclose

15

that disparity concealed from investors that Hesai's gross margins for the period beyond the already-completed fourth quarter of 2022 were also likely to fall far short of Hesai's historical global margins" and "concealed from investors the true reason" that gross margins would decrease after the IPO. (AC ¶¶ 96, 98; *see also id.* ¶ 123.) These arguments fail for at least two reasons.

First, they are "rendered untenable by the . . . plain English warnings" in the Offering Documents and cited in the Complaint. *See In re TVIX*, 25 F. Supp. 3d at 450. Plaintiff's assertions simply cannot be squared with Hesai's explicit disclosure that it "***expect[s]***" its "***gross margin to decrease as our shipment volume increases, especially with the increasing shipment of LiDAR units for the ADAS market.***" (AC ¶ 97.) Notably, in this same disclosure, Hesai explained that, in addition to its first ADAS product line, the AT series, which began shipment in 2022, it planned to launch a new ADAS product line, the FT series, which was "expected to ship in 2023." (*Id.*) "[T]aken together and in context," these disclosures warned "investors of exactly the risk" that Plaintiff claims was later revealed: that the shift in product mix toward the ADAS market, which was expected to increase in the coming year, would further decrease Hesai's overall gross margin after the IPO. *See Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996).

Second, Hesai's disclosures were sufficient to warn investors that gross margins for its ADAS products were significantly lower than margins for its Autonomous Mobility products. Plaintiff alleges that "Hesai's outstanding margins in prior years were based almost exclusively on sales of its Autonomous Mobility products." (AC ¶ 6.) But the Offering Documents disclosed that the recent decrease in gross margin was specifically caused by increasing shipments of ADAS products, which began in July 2022. (AC ¶¶ 95, 97.) The explicit link between the recent downward trend in gross margin—which was historically based solely on the Autonomous Mobility margin—and the introduction of ADAS products was more than enough to alert a

16

reasonable investor that Hesai's ADAS products had lower margins than its Autonomous Mobility products, and that these lower-margin ADAS products, in particular, were lowering the average gross margin overall. *See Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 725 (S.D.N.Y. 2016) (although defendant "did not provide a customer-level breakdown of revenue lost" in Brazil, "the Registration Statement provided more than enough information for an investor to conclude that [the] substantial loss . . . implicated Petrobras," as Petrobras was one of only two customers in Brazil). "Because the Offering Documents, read as a whole and in context, disclosed the fundamental risks" relating to gross margin and Hesai's shift to the ADAS market, Plaintiff's "allegations that further details and computations should have been included are insufficient to state plausibly [his Securities Act] claim." *In re TVIX*, 25 F. Supp. 3d at 453.

### 3.       Hesai Had No Duty To Disclose Q4 Results in the Offering Documents

Lastly, Plaintiff's allegations that Hesai failed to disclose Q4 2022 results and that its "gross margin had already drastically decreased in Q4 2022" also fail. (AC ¶¶ 123, 135.) A company "has no obligation to report its quarterly financial results before they have been finalized." *Sandoz v. Waterdrop Inc.*, 2023 WL 1767526, at *10 (S.D.N.Y. Feb. 3, 2023), *aff'd sub nom. Mi v. Waterdrop Inc.*, 2024 WL 159191 (2d Cir. Jan. 16, 2024); *see also Asay*, 2020 WL 1530745, at *9-10 (no duty under Item 303 to disclose quarterly results even when the quarter had ended before the IPO because the "results" could still be "audited or . . . subject to significant revision"); *see* 17 C.F.R. § 210.3-12(a), (g)(1)(ii) (SEC regulations requiring issuer to include within registration statement only financial statements no more than 135 days old as of filing's effective date—in this case, September 27, 2022). Plaintiff fails to allege that Hesai had finalized its Q4 2022 results by the time of the IPO. In any event, the absence of Q4 2022 gross margin data was immaterial, given the robust disclosures and cautionary statements detailed above. *See Asay*, 2021 WL 3871269, at *4 ("[G]iven the disclosures regarding the significant increase in

17

marketing costs in prior reporting periods, the doubling of user acquisition costs in the second quarter of 2018 would not have significantly altered the 'total mix' of information."); *In re N2K, Inc. Sec. Litig.*, 82 F. Supp. 2d 204, 209 (S.D.N.Y.) ("It can hardly be said that, by having not been explicitly told of the company's actual first quarter losses, a reasonable investor would have been misled," as the "prospectus is replete with warnings and explanations of risks associated with the company's past financial history and future expectations."), *aff'd*, 202 F.3d 81 (2d Cir. 2000).

### B.    No Material Misstatement or Omission Regarding the 1260H List

#### 1.    Hesai Adequately Disclosed the Prospect of Enhanced Trade Restrictions and the Associated Risks

Plaintiff's allegations about the 1260H List fail because the Offering Documents warned investors of the regulatory risks posed by the threat of U.S. export controls and economic sanctions, as well as the potential effects on its business.  It is well settled that where a disclosure is "broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).

The Complaint admits that Hesai disclosed "a comprehensive list of ways in which U.S.-Chin[a] tensions and a wide array of regulations might impact Hesai's business," including new "economic or trade sanctions, export control restrictions or outbound investment restrictions." (AC ¶¶ 110-11.)  Plaintiff does not claim that these disclosures were incorrect at the time of the IPO.  Instead, he alleges the disclosures were misleading for omitting that the Company could be named on the 1260H List, "particularly in light of its extensive disclosures of other current and potential regulatory risks."  (AC ¶ 111.)  But the Offering Documents did not just disclose "other" regulatory risks, they warned "investors of exactly the risk" that later realized.  *See Olkey*, 98 F.3d at 5.  The Offering Documents warned, for example, that (i) Hesai's technologies "***could be subject***

*to restrictions by the U.S. government in the future*" (Ex. B, Prospectus at 29); (ii) its business and customer relationships could be harmed by "new tariffs, legislation, or regulations" and noting, as one of many examples, that the U.S. had recently "issued new rules that expanded the definition of military end use," thereby impacting trade with Chinese companies "that have operations that could support military end uses" (*id.* at 30); and (iii) Hesai was "subject to trade restrictions, including economic sanctions and export controls" administered and enforced by U.S. and Chinese authorities, which "expose[d] [Hesai] to the risk of violating, or being accused of violating economic and trade sanctions and export control laws and regulations" (*id.* at 31). The Offering Documents repeatedly stressed that these risks—all of which were heightened by rising political and international trade tensions between the U.S. and China—could adversely affect its business, financial condition, results of operations, business partners or customers. (*Id.* at 29-31; AC ¶ 111.)

The Offering Documents also expressly warned that the U.S. may continue to broaden its sanctions and export control regime against Chinese companies, measures that could further harm Hesai's business:

> The current international trade tensions and political tensions between the U.S. and China, and any escalation of such tensions, may have a material negative impact on our ability . . . to continue to sell to global customers and further grow our customer base. For example, while we are not currently affected by the Entity List or other U.S. export control laws or regulations in any material respect, *as the Entity List and other U.S. export control laws and regulations continue to expand and evolve, future U.S. export controls may materially affect or target some of our significant suppliers or customers, in which event our business may be affected* . . . . (Ex. B, Prospectus at 31.)

These disclosures were "sufficient to pick up the regulatory risk that later materialized" and foreclose Plaintiff's claims. *See Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 602 (S.D.N.Y. 2022), *aff'd sub nom. Tseng v. De Vries*, 2023 WL 8073087 (2d Cir. Nov. 21, 2023); *see also Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39-40 (2d Cir. 2017) (disclosures about

19

company's exposure to evolving regulatory regime were adequate where they "included repeated warnings that its business was generally vulnerable to changing regulations").

For the same reasons, Plaintiff fails to allege a violation of Item 3(D) of SEC Form 20-F or Item 105 of Regulation S-K.  (*See* AC ¶¶ 129-32.)  The Offering Documents specifically disclosed the uncertain regulatory outlook and the risk of enhanced U.S. trade restrictions as factors that made investment in its business "speculative" and "risky."

### 2.  Hesai Had No Duty To Disclose a DoD-Specific Risk Because It Had Not Materialized at the Time of the IPO

Unable to deny that the Offering Documents expressly warned of the existing regulatory risks facing Hesai at the time of the IPO, Plaintiff alleges that Hesai should have disclosed its potential eligibility for inclusion on the DoD's 1260H List and the attendant risks of losing its U.S. customers.  (AC ¶¶ 12-16, 111.)  These allegations also fail to state a claim.

First, Plaintiff fails to allege any facts showing Hesai could have known it could be named to the 1260H List before the DoD's announcement ***nearly a year after the IPO***.  "The securities laws do not require clairvoyance in the preparation of offering documents," *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 664 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009), and "[c]ompanies subject to government regulation are not required to speculate or foresee coming regulation or its potential effect on the company."  *Kwalbrun v. Glenayre Techs., Inc.*, 201 F.3d 431 (2d Cir. 1999).  Plaintiff argues Hesai must have known of the forthcoming 1260H designation merely because it was building or planned to build two facilities in areas that the DoD unilaterally deemed "military-civil fusion enterprise zones" ***after the IPO***.  (AC ¶ 13.)  But he alleges no facts to show that Hesai (or anyone) knew at the time of the IPO that the DoD later would classify these areas as such.  The NDAA does not define "military-civil fusion enterprise zone," *see* Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-66 (2021), and the DoD

20

did not offer its expansive interpretation until seeking to justify its decision in Hesai's lawsuit. (Ex. M, DoD Brief at 27-29.)  Indeed, the DoD did not even find that Hesai resided in a "military-civil fusion enterprise zone" until it relisted Hesai to the 1260H List in October 2024—***twenty months after the IPO***.  (AC ¶ 156; Ex. L, DoD 2024 Hesai Memorandum at 10-12.)

Blue Orca's speculative allegations add nothing.  (AC ¶¶ 146-53.)  Even setting aside Blue Orca's ***admitted bias*** as a short seller (Ex. O, Blue Orca Report at 1), its alleged "evidence" of Hesai's connection to the Chinese military—which Plaintiff merely copies into the Complaint—***post-dates the IPO by over a year***.  (AC ¶¶ 146-52.)  Blue Orca also admits the products shown in images supposedly on military vehicles "did not have Hesai's logo." (*Id.* ¶ 150.)  Such speculative and self-serving allegations cannot be credited, particularly given that even the DoD, in stating its grounds for naming Hesai to the 1260H List, did not allege that the Company had ever sold, directly or indirectly, any products to the Chinese military.[5]  (*See id.* ¶ 156.)  *See also Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801-04 (S.D.N.Y. 2020) (given short sellers' "obvious motive to exaggerate the infirmities of the securities in which they speculate," courts should reject short-seller allegations that are uncorroborated, are "entirely unmoored in time," rely on confidential sources not "described at a sufficient level of particularity to indicate a high likelihood that they actually knew facts" attributed to them, and that were not independently verified by plaintiff's counsel).  In sum, nothing in the Complaint even suggests that Hesai knew, at the time of the IPO, of its eligibility for the 1260H List or that it could have predicted the precise regulatory measures that the DoD would take against it ***more than ten months after the IPO***.

---

[5]  To the extent Plaintiff implies Hesai should have known of its potential eligibility because LiDAR has "military applications" (AC ¶¶ 85-90), that alone is insufficient to designate an entity under the statute. *See* Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-66 (2021).

Second, Hesai had no duty to disclose that it theoretically could be named to the 1260H List. For an omission to be actionable, "the securities laws must impose a duty to disclose the omitted information." *Morgan Stanley*, 592 F.3d at 360. Courts have imposed such a duty where the issuer did not disclose "specific information about material *existing* business risks" or "*known* violations of existing foreign law or regulatory investigations into such violations." *RLX*, 632 F. Supp. 3d at 605. Here, the risk of DoD designation was not "imminent or inevitable but merely a possibility" at the time of the IPO, *RLX*, 632 F. Supp. 3d at 605, and "[n]on-disclosure of a potentiality does not form the basis of a securities fraud claim." *Grossman v. Sin*, 2025 WL 1330087, at *14-16 (C.D. Cal. Mar. 31, 2025) (regulatory risk posed by U.S. Entity List designation too speculative to impose a duty to disclose). Because Plaintiff does not plead any facts to show this risk had materialized at the time of IPO or that there were any claims of wrongdoing, he fails to state a claim as a matter of law. Nor can Plaintiff allege that Hesai has ever violated the NDAA, let alone that it did so prior to the IPO. Plaintiff admits the 1260H designation means only that the DoD will be prohibited from procuring goods or services either directly from the listed entities (effective June 2026) or indirectly through third parties (effective June 2027). (AC ¶¶ 74-75.)

Third, Hesai also had no duty to disclose the potential risk of losing its largest customer as a result of the DoD designation. Plaintiff assumes that Hesai must have known, at the time of the IPO, that a DoD designation might imperil the Company's relationship with its U.S. customers. (AC ¶¶ 15-16, 130.) But Plaintiff's contention is refuted by the statute itself. It was not until December 22, 2023, ***more than ten months after the IPO***, that the NDAA was amended to prohibit the DoD from indirectly contracting with 1260H entities through third parties. (Ex. E, NDAA Amend. § 805.) In other words, the statutory provision that could affect Hesai's business with its

22

U.S. customers was not enacted until ***nearly a year after the IPO***.  Hesai could not, and had no duty to, predict or disclose implications of laws that did not exist at the time of the IPO.

In any event, Plaintiff does not even allege that this hypothetical risk ***ever*** materialized.  He merely copies Blue Orca's speculation that the short seller "believe[s] that Hesai ***will soon*** lose a customer cohort" as a result of the DoD designation.  (AC ¶ 153.)

<u>Finally</u>, Hesai had no duty to "disclose information that is equally available, widely reported, or so basic that any investor could be expected to know it." *Bettis v. Aixtron SE*, 2016 WL 7468194, at *10 (S.D.N.Y. Dec. 20, 2016).  As the articles and reports cited in the Complaint show, the facilities that Hesai planned to build and the wide application of its technologies either were reported so extensively as to have become public knowledge, were incorporated in the Offering Documents, or both.  (AC ¶¶ 79, 81.)  Furthermore, Plaintiff admits that the statutory criteria for DoD designation are public (*id.* ¶¶ 71-73, 142), and thus were "equally available to shareholders" and the Company.  *See Bettis*, 2016 WL 7468194, at *12.  Investors were free to draw on facts and laws equally available to them and consider potential risks in the evolving regulatory landscape.  Because the Offering Documents disclosed all foreseeable regulatory risks at the time of the IPO, Plaintiff fails to allege any actionable omission regarding the 1260H List.

## II.    <u>PLAINTIFF'S 1260H LIST CLAIM IS TIME-BARRED</u>

Securities Act claims must be brought within one year after Plaintiff discovered or should have discovered the alleged misstatement or omission.  15 U.S.C. § 77m; *see also Pew v. Cardarelli*, 164 F. App'x 41, 43 (2d Cir. 2006).  Plaintiff knew or should have known of his 1260H List claim on January 31, 2024, when Hesai was first designated to the List.  Yet he did not bring this claim until November 13, 2025, ***almost two years later***.  It does not relate back to the original complaint because it is based on unrelated alleged misrepresentations and distinct factual allegations.  *See Caldwell v. Berlind*, 543 F. App'x 37, 40 (2d Cir. 2013) (affirming dismissal of

23

time-barred claims in amended Securities Act complaint filed "after significant delay following removal and transfer" because the new claims were based on different alleged misstatements). The 1260H List claim is therefore time-barred.

### III.    PLAINTIFF LACKS STANDING FOR HIS SECTION 12(A)(2) CLAIM

Plaintiff's Section 12(a)(2) claim also should be dismissed because he lacks standing. "The Supreme Court has held that claims under Section 12(a)(2) may be brought by those who have purchased securities in initial public offerings but not by those who purchased securities in a secondary market." *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009). Absent allegations that Plaintiff purchased shares directly in the IPO, his Section 12(a)(2) claim must be dismissed. *See In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 305 (S.D.N.Y. 2021).

Here, Plaintiff does not allege that he purchased shares from a statutory seller directly in the IPO. Moreover, Plaintiff's certifications submitted with his lead plaintiff motion confirm that he did not purchase shares directly in the IPO, but in the aftermarket. Plaintiff purchased his first shares on February 10, 2023, the day after the IPO, for approximately $22—above the IPO price of $19 per ADS. (Cert. of King Ho Wong, ECF No. 6-2 at 4.) These facts "necessarily mean[] that he did not buy through the [IPO] itself." *Stadnick v. Vivint Solar, Inc.*, 2015 WL 8492757, at *16 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d Cir. 2017).

Plaintiff's Section 12(a)(2) claim against Ms. DeVries and Cogency also should be dismissed because neither was a "statutory seller." *Stadnick*, 2015 WL 8492757, at *16. His Section 11 claim against Ms. DeVries should be dismissed as she did not "personally sign[]" the Registration Statement in her individual capacity. *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 CIV. 910 (GEL), 2005 WL 1881514, at *1 (S.D.N.Y. Aug. 5, 2005).[6]

---

[6]    Because Plaintiff fails to plead primary liability, his Section 15 claim for control person liability also fails. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).

24

## **CONCLUSION**

For the foregoing separate and independent reasons, the Amended Complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York
        December 29, 2025

Respectfully submitted,

/s/ Michael C. Griffin
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Hesai Group, Cogency Global, Inc. and Colleen A. DeVries*

/s/ Jonathan Rosenberg
O'MELVENY & MYERS LLP
Jonathan Rosenberg
Abby F. Rudzin
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone:    (212) 326-2000
jrosenberg@omm.com
arudzin@omm.com

*Counsel for Defendants Goldman Sachs (Asia) L.L.C., Morgan Stanley Asia Limited, Credit Suisse Securities (USA) LLC, and Huatai Securities (USA), Inc*