**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALAN PACELLA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HESAI GROUP, YIFAN LI, LOUIS T. HSIEH, KAI SUN, SHAOQING XIANG, CAILIAN YANG, COLLEEN A. DEVRIES, GOLDMAN SACHS (ASIA) L.L.C., MORGAN STANLEY ASIA LIMITED, CREDIT SUISSE SECURITIES (USA) LLC, HUATAI SECURITIES (USA), INC., COGENCY GLOBAL, INC. <br><br> Defendants. | Case No. 1:24-cv-876-CM <br><br> <u>CLASS ACTION</u> |

<u>**MEMORANDUM OF LAW IN OPPOSITION TO**</u>
<u>**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................ 1

II. STATEMENT OF FACTS .................................................................................... 3

    A.    Hesai's Operations and IPO ................................................................... 3

    B.    Hesai Revealed That Its Gross Margins Cratered Before and After the IPO ......... 4

    C.    Hesai Was Named on the DoD's 1260H List ................................................. 5

III. ARGUMENT ................................................................................................... 7

    A.    Plaintiffs Face a Minimal Pleading Burden under the Securities Act .................... 7

    B.    The Complaint Adequately Alleges Actionable Misleading Statements and Omissions Concerning Hesai's Gross Margins ........................................ 8

        1.    The Offering Documents Contained Misleading Statements and Omissions Regarding Gross Margins ........................................... 8

            a.    Misleading Statements Implying that Already-Declining Autonomous Mobility Margins, Not Drastically Lower ADAS Margins, Would Depress Hesai's Overall Gross Margin ........................................................ 9

            b.    Misleading Risk Disclosures About Decreasing Gross Margin ......................................................... 13

            c.    Other Misleading Statements About Hesai's Gross Margin ......................................................... 14

        2.    The Offering Documents Omitted a Known Material Trend That Was Required to be Disclosed ........................................ 15

    C.    The Complaint Adequately Alleges Actionable Misleading Statements and Omissions Concerning the Risks of Hesai's Inclusion on the 1260H List ................................................................... 18

        1.    The Offering Documents Contained Misleading Statements and Misleadingly Omitted Known Material Risks Associated with Hesai's Inclusion on the 1260H List .............................. 18

        2.    The Offering Documents Omitted Known Material Risks Concerning the Potential Loss of Hesai's Largest Customer ............ 22

        3.    Plaintiff's Claims Regarding the 1260H List Are Not Time-Barred ...................................................................... 23

D.    Defendant DeVries is Liable Under Section 11 ..................................................... 25

E.    The Complaint Adequately Alleges Control Person Liability Under
       Section 15 of the Securities Act ............................................................................ 25

IV.    CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asay v. Pinduoduo Inc.*,
  2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) ........................................................................ 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 7

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ................................................................................................ 11

*Credit Suisse First Boston Corp. v. ARM Financial Group, Inc.*,
  2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ........................................................................ 14

*Fuwei Films Sec. Litig.*,
  634 F. Supp. 2d 419 (S.D.N.Y. 2009) .................................................................................. 22

*Ganino v. Citizens Util. Co.*,
  228 F.3d 154 (2d Cir. 2000) ............................................................................................ 12, 22

*Garnett v. RLX Tech. Inc.*,
  632 F. Supp. 3d 574 (S.D.N.Y. 2022) ............................................................................ 20, 21

*Gimpel v. The Hain Celestial Group, Inc.*,
  156 F.4th 121 (2d Cir. 2025) ............................................................................................ 8, 12

*Grossman v. Sin*,
  2025 WL 1330087 (C.D. Cal. Mar. 31, 2025) ...................................................................... 21

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ................................................................................................................ 7

*Ho v. Duoyuan Glob. Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012) .................................................................................. 24

*Honig v. Hansen*,
  2022 WL 1239632 (S.D.N.Y. Apr. 27, 2022) ...................................................................... 11

*Hutchison v. Deutsche Bank Sec. Inc.*,
  647 F.3d 479 (2d Cir. 2011) ................................................................................................... 7

*In re American International Group, Inc. (AIG) 2008 Sec. Litig.*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010) ............................................................................ 14, 20

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y 2013)................................................................... 19

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015)..................................................................... 8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013)........................................................ 12, 14, 17

*In re Glob. Crossing, Ltd. Sec. Litig.*,
    2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005).......................................................... 25

*In re Hub Cyber Security Ltd.*,
    2025 WL 872078 (S.D.N.Y. Mar. 20, 2025) ......................................................... 8

*In re Lehman Bros. Mortgage–Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011).............................................................................. 25

*In re N2K, Inc. Sec. Litig.*,
    82 F. Supp. 2d 204 (S.D.N.Y. 2000)................................................................... 17

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
    930 F. Supp. 68 (S.D.N.Y. 1996) ...................................................................... 14

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)............................................................................... 8

*In re Wells Fargo & Co. Sec. Litig.*,
    2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)....................................................... 15

*In re WorldCom, Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004).................................................................. 22

*Kwalbrun v. Glenayre Techs., Inc.*,
    201 F.3d 431 (2d Cir. 1999).............................................................................. 20

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011)........................................................................... 7, 16

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)...................................................................................... 8, 12

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)....................................................................................... 24

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)............................................................................... 8

iv

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
2022 WL 17815767 (2d Cir. Dec. 10, 2022) ................................................................ 20

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015) .................................................................................................. 15

*Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
595 F.3d 86 (2d Cir. 2010) .......................................................................................... 8

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012) ................................................................................. 15, 16

*Sandoz v. Waterdrop Inc.*,
2023 WL 1767526 (S.D.N.Y. Feb. 3, 2023) ............................................................... 17

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017) ........................................................................................ 20

*Stevelman v. Alias Research Inc.*,
174 F.3d 79 (2d Cir. 1999) ........................................................................................ 24

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015) .................................................................................... 8, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .................................................................................................... 7

*Wang v. Cloopen Grp. Holding Ltd.*,
661 F. Supp. 3d 208 (S.D.N.Y. 2023) ................................................................... 17, 25

**Statutes**

15 U.S.C. § 77k ............................................................................................................. 7

15 U.S.C. § 77k(a)(1) ................................................................................................... 25

**Rules**

Fed. R. Civ. P. 8(a) ....................................................................................................... 7

Fed. R. Civ. P. 15 ........................................................................................................ 24

Fed. R. Civ. P. 15(c)(2) ................................................................................................ 24

**Regulations**

17 C.F.R. § 229.10 ....................................................................................................... 15

17 C.F.R. § 229.105 ..................................................................................................... 18

17 C.F.R. § 229.303 ................................................................................................ 15

17 C.F.R. § 240.10b-5(b) .......................................................................................... 8

**Other Authorities**

*Commission Guidance Regarding Management's Discussion and Analysis of Financial
  Condition and Results of Operations*,
  SEC Release Nos. 33-8350 ..................................................................................... 15

Lead Plaintiff King Ho Wong ("Plaintiff") submits this memorandum in opposition to the motion (Dkt. No. 39) by Defendants Hesai Group ("Hesai" or the "Company"), Goldman Sachs (Asia) L.L.C., Morgan Stanley Asia Limited, Credit Suisse Securities (USA) LLC, Huatai Securities (USA), Inc., Cogency Global, Inc., and Colleen A. DeVries (collectively, "Defendants") to dismiss Plaintiff's Amended Complaint (Dkt. No. 33, "Complaint").[1]

## I.    PRELIMINARY STATEMENT

Hesai is a Chinese LiDAR company that held its initial public offering of its American Depositary Shares ("ADSs") in February 2023 ("IPO"). Plaintiff brings claims pursuant to Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") based on misleading statements and omissions of material fact in Hesai's IPO offering documents.

The Complaint alleges that Hesai's IPO offering documents contained misleading statements conveying that the Company's highly-touted industry-leading gross margin would continue to decrease in the (then-completed) fourth quarter of 2022. The Offering Documents explained that the gross margin for Hesai's legacy Autonomous Mobility LiDAR units, which had historically been over 50%, had been declining since at least 2021, and that production of its newer line of cheaper advanced driver-assistance systems ("ADAS") LiDAR units had just begun in July 2022 and was still ramping up. In truth, unbeknownst to investors, the ADAS units had gross margins of ***less than 5%, an order of magnitude lower*** than the margins for the Autonomous Mobility units, so they were actually *exacerbating* Hesai's existing gross margin decline. The omission of those critical facts from Hesai's offering documents rendered several statements misleading and violated Defendants' duty to disclose the known, material trend pursuant to SEC

---

[1] References to "Mtn." are to Defendants' motion to dismiss the Complaint. References to "¶__" are to the Complaint. Internal citations and quotations are omitted unless otherwise indicated.

1

disclosure regulations. When the Company revealed, shortly after the IPO, that its gross margin had plummeted due to drastically lower ADAS margins that significantly worsened the existing decline, the market was shocked and the price of Hesai's ADSs fell precipitously.

The Complaint also alleges that Defendants failed to disclose in Hesai's IPO offering documents a material, known risk that Hesai could be named by the U.S. Department of Defense ("DoD") to a stigmatizing list of "Chinese military companies" (the "1260H List"). Defendants knew, at the time of the IPO, that Hesai could be named on the 1260H List because "Chinese military companies" were defined by law to include "[e]ntities residing in or affiliated with a military-civil fusion enterprise zone," and Hesai had major facilities in two such zones. When the DoD named Hesai on the 1260H List, Hesai's share price plummeted. Hesai sued the DoD to contest its inclusion on the list, but a federal judge definitively ruled against it on the grounds that Hesai's facilities were located in military-civil fusion enterprise zones and Hesai's LiDAR products have substantial military applications.

Defendants' motion points to various statements in the offering documents disclosing that gross margin was expected to decrease "*as*" production of the ADAS units ramped up. However, none of these statements disclosed the massive margin disparity between the Autonomous Mobility and ADAS product lines, nor did they say that the margin disparity or shift in product mix toward greater ADAS production was ***causing or exacerbating*** the gross margin decrease. Likewise, Defendants point to the offering documents' myriad disclosures of *other* geopolitical regulatory risks, but none of them had anything to do with the risk of Hesai being named to the 1260H List. Those disclosures were not sufficient to apprise investors of the known material risk that Hesai qualified for the 1260H List and could suffer material consequences, including the potential loss of its largest customer (which would also adversely affect Hesai's gross margins).

2

The Complaint's allegations easily meet the low burden for pleading violations of Sections 11 and 15 of the Securities Act, and thus Defendants' motion must be denied.

## II.    STATEMENT OF FACTS

### A.    Hesai's Operations and IPO

Hesai is a Chinese manufacturer of light detection and ranging ("LiDAR") products. ¶¶44. LiDAR is a remote sensing technology akin to sonar and radar. ¶45. Hesai's products are used primarily in the automotive industry for advanced driver-assistance systems ("ADAS") and Autonomous Mobility (*i.e.*, driverless cars or robotaxis). ¶¶46-50, 54. By the time of its IPO, Hesai purported to be the world's most commercially successful LiDAR company. ¶51.

Prior to the IPO, Hesai had been making and selling Autonomous Mobility products for multiple years. ¶55. The Company first began "volume shipment" of ADAS products to customers in July 2022. *Id.* At the time of the IPO, Hesai manufactured its LiDAR products at its in-house manufacturing facilities in Jiading, Shanghai, China. ¶56. Hesai claimed that its Jiading manufacturing facilities could produce approximately 35,000 non-ADAS LiDAR units per year, plus approximately 20,000 ADAS units per month. *Id.* At the time of the IPO, Hesai was also building a new manufacturing facility, the "Maxwell Facility," which was expected to increase its annual total production capacity from approximately 275,000 total units to approximately 1.2 million. ¶58.

Hesai's outstanding historical margins were a major selling point for the IPO, serving as a central pillar of Hesai's growth story. ¶52. The Offering Documents boasted that Hesai earned gross margins over 50% from 2019-2021. *Id.* Hesai repeatedly touted that it "has been growing rapidly while maintaining industry-leading gross margins," how its "industry-leading gross margin of approximately 50% from 2020 onwards enables it to organically and rapidly grow its business," and that its "margins validate its global leadership." ¶53.

3

On January 17, 2023, Hesai filed a Registration Statement with the SEC on Form F-1, which, after amendment, was declared effective on February 8, 2023 ("Registration Statement"). ¶65. On February 9, 2023, Hesai filed its final prospectus for the IPO with the SEC on Form 424B4, which was expressly incorporated into, and forms part of, the Registration Statement ("Prospectus," and together with the Registration Statement, the "Offering Documents"). ¶67. That same day, Hesai commenced the IPO on NASDAQ pursuant to the Registration Statement. ¶66. In the IPO, Hesai, through the IPO underwriters, sold 10 million ADSs for $19.00 per ADS, plus a partial exercise of the underwriters' over-allotment option. *Id.* In total, Hesai raised over $192 million in gross proceeds in the IPO. ¶¶66, 70.

**B.      Hesai Revealed That Its Gross Margins Cratered Before and After the IPO**

On March 16, 2023, just five weeks after the IPO, Hesai revealed its quarterly financial results for the fourth quarter of 2022 ("4Q22) and its full-year financial results for 2022. ¶135. Hesai reported that its gross margin had fallen to 30.0% for 4Q22, ***a decrease of 43%*** year-over-year from the 52.4% gross margin it reported for the fourth quarter of 2021. *Id.* Hesai's gross margin for the full year of 2022 was 39.2%, ***a decrease of 26%*** from the 53.0% gross margin it reported for 2021. *Id.* Hesai attributed this massive decline to "the increased shipments of lower-margin ADAS LiDAR products." *Id.* On this news, the price of Hesai's ADSs fell over 10%. ¶136.

In the corresponding earnings conference call ("4Q22 Earnings Call"), Hesai's CFO, Defendant Hsieh, revealed to investors for the first time that while Hesai's gross margin for its Autonomous Mobility products was "over 50%" in 2022, with an average selling price ("ASP") of over $13,000, its gross margin for ADAS products was "***less than 5%***" in 2022, with an ASP of approximately $742. ¶137. Hsieh revealed that "we expect the gross margin to be ... probably 9% to 13% as we exit this year." *Id.* Hsieh reported that in 2022, Hesai's ADAS sales totaled approximately $46 million, comprising "about 25%" of Hesai's revenues. ¶138.

As Hsieh explained, ADAS sales were "expected to account for 40% to 45% of revenue in 2023 with an expected more than 3x increase from the 62,000 units in 2022." *Id.* According to Hsieh, the Company's gross margin would remain low, and potentially decrease even further, for at least the first two quarters of 2023 due to the shift towards lower-margin ADAS products. ¶139.

Two months later, during the earnings call for the first quarter of 2023 ("1Q23"), Hesai revealed that its 1Q23 gross margin was 37.8%, *a decrease of 26%* from its 50.9% gross margin in the first quarter of 2022. ¶141. Hesai also revealed that it "anticipate[s] a lower gross margin for Q2 and Q3" and provided guidance for gross margin of 25-30% for 2023, below its long-term target of 30-35% and far below its historical margins of over 50%. *Id.*

### C.    Hesai Was Named on the DoD's 1260H List

Section 1260H of the 2021 National Defense Authorization Act ("NDAA") provides that the DoD may designate an entity as a "Chinese military company" and place it on the "1260H List" if the entity meets certain statutory criteria. ¶71. Under Section 1260H, a "Chinese military company" may include "an entity that is ... identified as a military-civil fusion contributor to the Chinese defense industrial base." ¶72. "Military-civil fusion contributor" is defined to include entities "residing in or affiliated with a military-civil fusion enterprise zone." *Id.* Among other impacts, being named on the 1260H List creates a distinct and potentially harmful stigma for a company, particularly in the U.S. market. ¶75.

On January 31, 2024, the DoD included Hesai in its published 1260H List, causing Hesai's share price to fall over 30%. ¶¶142-43. In August 2024, Defendant Li, Hesai's CEO, revealed that being named on the 1260H List "seriously impact[ed] our reputation," "impeded some of the business opportunities," and strained relationships with "customers because they're worried that we might have ties to the Chinese military." ¶144.

On May 13, 2024, in response to its inclusion on the 1260H List, Hesai sued the DoD seeking its removal from the list. ¶155. In October 2024, the DoD removed and then immediately relisted Hesai, providing Hesai with new factual grounds for Hesai's inclusion on the 1260H List. ¶156. Among other things, the new grounds for Hesai's listing included that Hesai "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone or receiv[es] assistance from the Government of China through such enterprise zone." *Id.*

On July 11, 2025, U.S. District Judge Paul L. Friedman denied Hesai's motion for summary judgment and granted the DoD's cross-motion for summary judgment. ¶157. Judge Friedman found that the DoD's inclusion of Hesai on the 1260H List was authorized and supported by substantial evidence due to (1) the location of Hesai's facilities in two Chinese military-civil fusion enterprise zones, the Jiading Industrial Zone and Chongqing Economic Development Zone; coupled with (2) the substantial military applications of Hesai's LiDAR products and research. *Id.*

At the time of the IPO, Hesai knew that it was building facilities in these two military-civil fusion enterprise zones. ¶¶76-84. Hesai also knew at the time of the IPO that its LiDAR products had substantial military applications. ¶¶85-90. Those facts were sufficient to support Hesai's inclusion on the 1260H List, but Hesai did not disclose in its Offering Documents the risk that it could be named on the 1260H List.

Finally, in March 2025 Blue Orca Capital issued a report on Hesai. ¶146. The report revealed photographic, video, and testimonial evidence appearing to show Hesai's products being used in Chinese military vehicles, undermining Hesai's disclaimer of any direct connection to the Chinese military (which was not a required criteria for inclusion on the 1260H List). ¶¶146-52. The report also revealed some of the consequences of Hesai's inclusion on the 1260H List, including the risk to Hesai's high-margin business with its largest customer, GM Cruise. ¶153.

6

## III.   ARGUMENT

### A.   Plaintiffs Face a Minimal Pleading Burden under the Securities Act

In ruling on a Rule 12(b)(6) motion, a court must accept all well-pled factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-22 & n.4 (2007). A plaintiff need only plead facts from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Section 11 of the Securities Act imposes liability if any part of a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statement therein not misleading." 15 U.S.C. § 77k. Accordingly, to plead a *prima facie* Section 11 claim, Plaintiff need only allege a material misrepresentation or omission in Hesai's registration statement.

In contrast to securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), "plaintiffs alleging violations of Sections 11 and 12(a)(2) [do] not need [to] plead scienter, reliance, or loss causation." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 (2d Cir. 2011). Allegations of non-fraudulent misconduct, including claims under Section 11 of the Securities Act, must satisfy only the notice pleading standards of Rule 8, which requires a "short and plain statement" of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).

Section 11 places "a relatively minimal burden on a plaintiff." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). "The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability." *Id.* at 381–82 ("[l]iability against the issuer of a security is *virtually absolute*, even for innocent misstatements.").

7

**B.**     **The Complaint Adequately Alleges Actionable Misleading Statements and Omissions Concerning Hesai's Gross Margins**

Statements of material fact are actionable if they are either false or misleading. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011). A misleading statement, or "half-truth," is a "representation that states the truth only so far as it goes, while omitting critical qualifying information." *Gimpel v. The Hain Celestial Group, Inc.*, 156 F.4th 121, 138 (2d Cir. 2025) (quoting *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239–40 (2d Cir. 2016)). Defendants have a duty to disclose omitted facts "necessary in order to make the statements made ... not misleading." *Id.* (quoting 17 C.F.R. § 240.10b-5(b)). A duty to disclose also arises when a statute or regulation requires disclosure. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015).

"The veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers." *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010). Accordingly, "[o]nce a company speaks on an issue or topic, there is a duty to tell the whole truth ...." *Vivendi*, 838 F.3d at 258 (quoting *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014)).

Here, the Complaint alleges that Hesai's Offering Documents: (1) contained false and misleading statements and omissions of material facts concerning Hesai's gross margins; and (2) failed to disclose known trends affecting Hesai's gross margins that were having, and were likely to have, a material impact on Hesai's operations and financial results, in violation of applicable SEC disclosure requirements. These allegations adequately allege claims under Section 11.

**1.**     **The Offering Documents Contained Misleading Statements and Omissions Regarding Gross Margins**

"The test for whether a statement is materially misleading is whether representations, viewed as a whole, would have misled a reasonable investor." *In re Hub Cyber Security Ltd.*, 2025 WL 872078, at *16 (S.D.N.Y. Mar. 20, 2025) (quoting *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp.

3d 711, 742 (S.D.N.Y. 2015)). Here, the Offering Documents made several statements that were misleading due to the omission of critical facts concerning the extreme disparity in gross margins between Hesai's legacy Autonomous Mobility business and its rapidly expanding ADAS business.

        a.        **Misleading Statements Implying that Already-Declining Autonomous Mobility Margins, Not Drastically Lower ADAS Margins, Would Depress Hesai's Overall Gross Margin**

Contrary to Defendants' assertions, the Offering Documents did not truthfully apprise investors that its ADAS units had drastically lower gross margins than its legacy Autonomous Mobility units, nor that the increasing sales of ADAS units would further drive down Hesai's declining gross margin. Instead, viewed as a whole, the challenged statements in the Offering Documents misleadingly conveyed only that Hesai's 4Q22 gross margin would continue the ongoing modest decline due to shrinking margins for Autonomous Mobility units, a trend that had begun long before the start of ADAS sales. ADAS production had only just started in July 2022 and those units were priced much lower than Autonomous Mobility units. As far as investors knew, ADAS units may have had margins that were at least comparable (percentage-wise) to Autonomous Mobility units, or would be soon once their production ramped up to full capacity (which would improve ADAS unit margins through economies of scale). An investor would reasonably infer from these statements that the then-ongoing modest downward trend of lower margins for Autonomous Mobility units that Hesai disclosed would continue to depress Hesai's overall gross margin only until ADAS production ramped up enough to sufficiently counteract that trend. In reality, Hesai's ADAS units generated drastically lower gross margins that would *exacerbate*, not counteract, the decrease in Hesai's highly touted gross margin. The Offering Documents failed to disclose these facts and misled investors.

The Offering Documents reported a modest decline in gross margin from 57.5% to 53.0% between 2020 and 2021, and to 44.0% for the first nine months of 2022. ¶95. The Offering

9

Documents explained that the decrease between 2020 and 2021 was "primarily due to the increased sales of LiDAR units that have lower margins." ¶101. Hesai did not begin selling ADAS units until July 2022, so this decrease could be attributed only to declining margins for Autonomous Mobility units. ¶102. The Offering Documents used ***identical*** language to explain the decrease in gross margin between the first nine months of 2021 and the first nine months of 2022: "primarily due to the increased sales of LiDAR units that have lower margins." ¶101. Repeating the ***exact same language*** implied that Hesai was again referring only to its sales of relatively lower-margin Autonomous Mobility units. ¶102. Again, any decrease in gross margin for at least the first six months of 2022 (two-thirds of the relevant period) could be attributed only to lower margins for Autonomous Mobility units, and there was no indication that this years-long trend had suddenly stopped or reversed in the third quarter of 2022.[2] Notably, Hesai's annual reports for 2022 and 2023 used *different* language to truthfully specify (unlike the statement in the Offering Documents) that its gross margin decreased in 2022 "primarily due to the increased shipments of ***lower-margin ADAS LiDAR products*** ...." ¶103.

When the Offering Documents stated that Hesai "expects its gross margin to further decrease in the fourth quarter of 2022 as it shifts its product mix toward LiDAR products for the ADAS market," ¶95, a reasonable investor would be misled to believe that ramping up ADAS production would *ameliorate* the ongoing downward trend in gross margin, not *accelerate* it. This makes sense because the Offering Documents disclosed that ADAS production had only started in

---

[2] Defendants argue that an investor could have calculated that Hesai's gross margin in the third quarter of 2022 continued the trend of decreasing gross margins that began several quarters earlier, as Defendants' chart indicates (Mtn. at 14). Of course, this would not have revealed that the *cause* of the continued decline in gross margin was drastically lower margins for Hesai's nascent ADAS business, as opposed to its Autonomous Mobility business that the Offering Documents admitted had declining margins.

July 2022 (¶96), ADAS products had a much lower selling price than Autonomous Mobility units (and thus contributed proportionately less to profits and revenues relative to its nascent sales volumes) (¶97), and Hesai planned to massively increase its ADAS production (by nearly one million units per year by 2023), which would improve its ADAS unit margins due to economies of scale (¶58). The statements in the Offering Documents (¶¶95, 97, and 101), taken collectively, therefore falsely imply that while Hesai's early-stage, low-volume production of cheaper ADAS units in 4Q22, "as [Hesai] shifts its product mix toward [ADAS] products" (¶95), would not sufficiently counteract in 4Q22 the long-established, disclosed downward trend in Autonomous Mobility margins, but that trend would likely reverse in future periods as ADAS production significantly ramped up, in both quantity (*i.e.*, contribution to overall profits and revenues) and production efficiency (*i.e.*, improved margins from scaling up). These statements were misleading because they "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists." *Honig v. Hansen*, 2022 WL 1239632, at *4 (S.D.N.Y. Apr. 27, 2022) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

Defendants are wrong that the Offering Documents contained "repeated disclosures that the shift toward ADAS products ... *was causing* a decrease in gross margin." Mtn. at 13 (emphasis added). The Offering Documents say no such thing. Instead, they say gross margin will decrease "*as* [Hesai] shifts its product mix" toward ADAS products, not "*because of*" Hesai shifting its product mix. ¶95 (emphasis added). Likewise, the Offering Documents say that Hesai "expects ... gross margin to decrease *as* [its] shipment volume increases, especially *with* the increasing shipment of LiDAR units for the ADAS market," not "*because of*" increasing ADAS shipments. ¶97 (emphasis added). "As" and "with" denote only concurrency, not causation.

11

These statements misleadingly omitted the principal reason that had caused Hesai's gross margin to substantially decline in the second half of 2022, and which was likely to persist after the IPO: Hesai's ADAS gross margins were ***an order of magnitude lower*** than its Autonomous Mobility gross margins. ¶96. This was a critical fact for investors because Hesai had only just started ramping up production of its ADAS products in July 2022, and it planned to massively increase its lower-margin ADAS production in the months and years following the IPO. *Id.* As Hesai ramped up its ADAS business, its gross margin would not only "further decrease" at the modest rate indicated by the reported periods, it would *accelerate*, decreasing even faster. *Id.* Failing to disclose the gaping margin disparity between its rapidly expanding ADAS business and its legacy Autonomous Mobility business thus misled Hesai's IPO investors as to this material aspect of Hesai's growth prospects. *Id.* These statements in the Offering Documents (¶¶95, 97, and 101) provide investors with misleading half-truths, while concealing critical information. *Gimpel*, 156 F.4th at 138. The omitted facts were material because there is a "substantial likelihood" that they "would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx*, 563 U.S. at 38

To the extent Defendants argue that these undisclosed facts were not material, materiality is an inherently fact-specific inquiry, and omissions may not be dismissed as immaterial "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 162 (2d Cir. 2000). Here, the precipitous stock price decline upon revelation of the truth about Hesai's ADAS margins and their impact on Hesai's overall gross margin further underscores that the omitted facts were new and material to investors. *See, e.g., In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 520 (S.D.N.Y. 2013) (market reaction supports materiality of allegations).

12

### b.    Misleading Risk Disclosures About Decreasing Gross Margin

Other statements in the Offering Documents also misleadingly implied that reasons other than drastically lower margins for ADAS products were to blame for Hesai's declining gross margins. For example, the Offering Documents stated that:

> We expect the average selling price for our LiDAR units and our gross margin to decrease as our shipment volume increases, especially with the increasing shipment of LiDAR units for the ADAS market .... The LiDAR products for the ADAS market generally have much lower selling prices than the LiDAR products for the Autonomous Mobility market, and our changes in product mix that now starts to focus more on the LiDAR products for the ADAS market will decrease our average selling price.

¶97. These statements misleadingly attributed the predicted decline in gross margin only to the "much lower selling prices" for ADAS compared to Autonomous Mobility products. ¶98. While it was true that Hesai's ADAS products had substantially lower selling prices (by a factor of nearly 20), the real reason that the shift towards ADAS would decrease Hesai's gross margin was the margin disparity, not the price disparity. *Id.* This statement also contributed to the false impression, as noted above, that Autonomous Mobility margins were continuing to modestly decrease and the nascent ADAS business (with lower ASP and thus lower contributions to profit and revenue) would not yet be sufficient to counteract that trend in the short-term as production was still ramping up, *i.e.,* as "shipment volume" was "increasing."

Similarly, the Offering Documents stated: "If we are unable to generate sufficient production cost savings in the future to offset price reductions, our gross margin and profitability would be adversely affected." ¶99. This statement misleadingly obfuscated and omitted the principal reason that had already caused Hesai's gross margin to decline: significantly lower gross margins for its ADAS products. ¶100. Instead, these statements misleadingly attributed a *potential* decline in gross margin (which had already materialized at the time of the IPO) to a *hypothetical*

inability to "offset price reductions." ¶100. This generic and obvious statement, that *if* Hesai was unable to offset price reductions by cost savings it would reduce margins, further perpetuated the false impression that decreased gross margins might result only from lower prices, as opposed ot being caused by the drastically lower ADAS unit margins. *Id.*

These sort of generic risk disclosures "do not shelter defendants from liability if they fail to disclose hard facts critical to appreciating the magnitude of the risks described." *In re American International Group, Inc. (AIG) 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010) (finding plaintiffs "adequately pleaded that the various general disclosures … were insufficient to fulfill Defendants' disclosure obligations") (quoting *Credit Suisse First Boston Corp. v. ARM Financial Group, Inc.*, 2001 WL 300733, at *8 (S.D.N.Y. Mar. 28, 2001)); *Facebook*, 986 F. Supp. 2d at 515 (citing *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("[E]ven apparently specific risk disclosures ... are misleading if the risks are ... significantly greater or more certain than those portrayed")).

### c.    Other Misleading Statements About Hesai's Gross Margin

Finally, the Offering Documents touted that "[Hesai's] shipment volume, revenue scale and margins validate its global leadership" and that "[Hesai's] industry-leading gross margin enables it to organically and rapidly grow its business." ¶95. These statements were misleading because they concealed that increasing sales of ADAS units with drastically lower margins carried a material risk of Hesai realizing significantly lower margins going forward, which would materially undermine Hesai's "global leadership" and its ability "to organically and rapidly grow its business." ¶96. These statements misleadingly implied that Hesai's rapidly expanding ADAS business did not stand to severely undercut the Company's highly-touted margins, which were historically based on the much higher-margin Autonomous Mobility business. Even if these statements were merely corporate optimism or puffery they are still actionable because "they

14

contradict facts that are known" to Defendants. *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at *11 (S.D.N.Y. Sept. 30, 2021).[3]

> **2.      The Offering Documents Omitted a Known Material Trend That Was Required to be Disclosed**

U.S. Securities and Exchange Commission ("SEC") Regulation S-K (17 C.F.R. § 229.10) governs the duty of affirmative disclosure imposed upon filers of various reports under the Securities Act and the Exchange Act. In connection with the IPO, these regulations imposed on Defendants the duty to disclose in Hesai's Registration Statement certain material trends, risks, and uncertainties. Regulation S-K requires that registration statements filed on SEC Form F-1, such as Hesai's, comply with the other requirements of Regulation S-K "to the extent provided in the forms to be used for registration under the [Securities] Act." Part I, Item 4(a) of Form F-1 requires registrants to furnish the information required by Part I of SEC Form 20-F.

Item 5(D) of Form 20-F ("Item 5") closely tracks the disclosure requirements of Item 303 of Regulation S-K, 17 C.F.R. § 229.303 ("Item 303").[4] Item 5, like Item 303, "impose[s] a disclosure duty 'where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have a material effect on the registrant's financial condition or operating results.'" *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681

---

[3] To the extent Hesai's gross margins, due to the impact of ramping up ADAS production, were no longer "industry-leading" or "global[ly] lead[ing]" metrics, they conveyed concrete, verifiable assertions rather than mere opinion, puffery, or corporate optimism. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184 (2015) ("a determinate, verifiable statement" is not puffery).

[4] *Interpretation: Commission Guidance Regarding Management's Discussion and Analysis of Financial Condition and Results of Operations*, SEC Release Nos. 33-8350; 34-38960; FR-72, available at https://sec.gov/rules/interp/33-8350.htm#P18_1728 (explaining that Item 5 calls "for the same disclosure as Item 303 of Regulation S-K).

15

F.3d 114, 120 (2d Cir. 2012). The SEC instructs issuers to discuss trends that would cause reported results "not to be necessarily indicative of future performance." *Id.*

The mandatory nature of the Item 5 and Item 303 disclosure requirements mean that "a reasonable investor would interpret the absence of an Item 303 disclosure to imply the nonexistence of [such] 'known trends or uncertainties.'" *Stratte-McClure*, 776 F.3d at 102. Accordingly, failing to comply with Item 5 or Item 303 "by omitting known trends or uncertainties from a registration statement" is actionable under Section 11 of the Securities Act. *Id.* at 101 (citing *Panther Partners*, 681 F.3d at 120 and *Litwin*, 634 F.3d at 716).

Here, Defendants violated Item 5, and thus Section 11 of the Securities Act, by failing to disclose the trend of drastically lower gross margins from Hesai's sales of ADAS products, as compared with its legacy Autonomous Mobility products, which had already significantly decreased Hesai's gross margin for 4Q22 and was likely to continue to decrease overall gross margin in future periods. That ADAS margins were a full order of magnitude lower than Autonomous Mobility margins was known to Hesai from July 2022 through the time of the February 2023 IPO, spanning more than 7 months.

Defendants contend that the margin disparity was "merely a factor contributing to the declining gross margin trend, not a trend itself," Mtn. at 15, but by the time of the IPO Hesai would have known not just of the drastically lower ADAS margins, but also that those margins had dragged down Hesai's overall gross margin in the (completed) third and fourth quarters of 2022 and the halfway-completed first quarter of 2023. While the drastically lower ADAS margins were *directionally* "consistent with the trend disclosed by the Company" of decreasing gross margin, *cf.* Mtn. at 15, the fact that the *cause* of the decreasing gross margin was due to the rapidly expanding ADAS business, as opposed to the legacy Autonomous Mobility business, was material to

16

investors because ADAS margins would have an increasing negative impact on Hesai's overall margin as ADAS volumes expanded. *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 232 (S.D.N.Y. 2023) (finding that alleged omitted trends "were not just continuations of previous trends, but material accelerations of such trends, which were inconsistent with the Registration Statement's representations"). In *Facebook*, 986 F. Supp. 2d at 519, where the registration statement highlighted the significance of a financial metric, as the Offering Documents did here with respect to Hesai's "industry leading" gross margin, the court found that changes in that metric driven by an omitted trend supported a finding that the materiality of the omitted trend was adequately alleged.

Defendants' argument that Hesai had no duty to disclose its 4Q22 results in the Offering Documents, Mtn. at 17, misses the point.[5] Plaintiff does not allege Hesai had to disclose its 4Q22 results before they were finalized, but it did have to disclose known material trends that were likely to impact its financial results going forward, such as the drastically lower ADAS margins. *See Facebook*, 986 F. Supp. 2d at 513 (finding that "under Item 303, Defendants were required to disclose the issues even though it arose intra-quarter"); *Wang*, 661 F. Supp. 3d at 232 (same).

---

[5] The cases Defendants cite on this point are likewise inapposite. Neither *Sandoz v. Waterdrop Inc.*, 2023 WL 1767526, at *10 (S.D.N.Y. Feb. 3, 2023), *aff'd sub nom. Mi v. Waterdrop Inc.*, 2024 WL 159191 (2d Cir. Jan. 16, 2024), nor *In re N2K, Inc. Sec. Litig.*, 82 F. Supp. 2d 204, 209 (S.D.N.Y. 2000), involved allegations of undisclosed material trends under Item 303. In *Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at *9-10 (S.D.N.Y. Mar. 30, 2020), the court found that the prospectus provided "ample warning and disclosures" about the alleged undisclosed trend of increased marketing expenses, and thus disclosure of the un-finalized pre-IPO quarter's results (including marketing expenses) were not material. No such ample disclosures were provided here.

C.    **The Complaint Adequately Alleges Actionable Misleading Statements and Omissions Concerning the Risks of Hesai's Inclusion on the 1260H List**

1.    **The Offering Documents Contained Misleading Statements and Misleadingly Omitted Known Material Risks Associated with Hesai's Inclusion on the 1260H List**

The Offering Documents included a purported risk disclosure titled, "The current tensions in international trade and rising political tensions, particularly between the United States and China, may adversely impact our business, financial condition, and results of operations," which gave the false impression of providing investors with a comprehensive list of ways in which U.S.-Chinese tensions and a wide array of specific regulations might impact Hesai's business. ¶110. However, this laundry list of other hypothetical geopolitical risks misleadingly omitted that, at the time of the IPO, Hesai already qualified for inclusion on the 1260H List, posing a material risk. ¶111. Notably, this disclosure warns specifically of risks from "***new*** tariffs, legislation, or regulations" or "trade agreements [that] are ***renegotiated***," ¶110 (emphasis added), not from known risks based on known facts and *existing* laws such as the 2021 NDAA and Section 1260H.

Defendants were also required to disclose the known material risk of Hesai being named to the 1260H List under Item 3(D) of SEC Form 20-F ("Item 3"). Item 3 requires that the registrant "prominently disclose risk factors that are specific to the company or its industry and make an offering speculative or one of high risk," imposing essentially the same requirements as Item 105 of Regulation S-K. 17 C.F.R. § 229.105 ("Item 105"). The SEC's instructions for Item 3 also explain that "[r]isk factors should be concise and explain clearly how the risk affects the issuer or the securities." SEC Form 20-F, Item 3(D). Under Item 3, Hesai had a duty to disclose the known material risk that it could be named to the 1260H List. ¶¶127-33.

In arguing that the Offering Documents adequately disclosed this risk, Defendants point to several inapposite disclosures of risks that have nothing to do with the 1260H List. *See* Mtn. at 18-

18

19 and Defendants' Ex. B (Prospectus) at 30-31 (citing "restrictions by the U.S. government *in the future*," "*new* tariffs, legislation, or regulations," "*new* rules that expanded the definition of military end use... expanding the export license requirements *for U.S. companies*," and "trade restrictions, including economic sanctions and export controls, such as those administered and enforced by [various Chinese and U.S. government agencies *not* including the DoD.]) (emphases added). At the time of the IPO, Section 1260H was part of an existing law, not a new or future law. Hesai was not a U.S. company and Section 1260H did not impact its export license requirements. Nor was Section 1260H a tariff, trade restriction, economic sanction, or export control administered by any of the trade-oriented agencies listed, which did not include the DoD.

Likewise, risks concerning the "Entity List" that Defendants highlight (Mtn. at 19) have nothing to do with the 1260H List.[6] That disclosure also affirmatively states that "we are not currently affected by the Entity List or other U.S. export control laws or regulations in any material respect," and warns only that "future U.S. export controls" may affect Hesai's business. Section 1260H is not an export control law, nor is it a "future U.S. export control." At bottom, not one of the disclosures Defendants point to apprised investors of the specific, known risk from existing U.S. law that the DoD could name Hesai as a Chinese military company on the 1260H List.[7]

---

[6] *See* Defendants' Ex. B at 30 ("The U.S. government has also broadened the restrictions on the sale of goods manufactured outside the United States that are produced using certain controlled U.S.-origin technology or software to companies on a special list, or the Entity List"). Defendants vaguely insinuate a connection between the Entity List and the 1260H List, but they notably stop short of asserting that the lists are actually related in any pertinent way. They are not.

[7] This case is unlike *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014), where "the risk disclosures could not have misled a reasonable investor into thinking that risks like the AIG suit did not exist in light of [disclosures] about BoA's exposure to MBS litigation generally and to ... AIG specifically." Here, the inapposite disclosures in the Offering Documents did not warn of general risks, of which being named to the 1260H List was a specific manifestation. That would be true only if Section 1260H was a *new* law, or an export license requirement or trade restriction. It was not. Likewise, this case

Generally disclosing an "uncertain regulatory outlook" and a risk of inapplicable "U.S. trade restrictions," Mtn. at 20, did not give Hesai a free pass to omit specific, known, material risks. *AIG*, 741 F. Supp. 2d at 531.

Defendants next argue that the Complaint fails to allege that they knew for certain that Hesai had been, or would be, named on the 1260H List, Mtn. at 20, but that is not what the law requires. "[E]ven if Defendants could not determine with certainty that [an event would occur], they were required to evaluate [the event's] consequences on the assumption that it would come to fruition and to disclose its potential impact unless Defendants determined that a material effect on the registrant's financial condition or results of operations is not reasonably likely to occur." *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2022 WL 17815767, at *3 (2d Cir. Dec. 10, 2022), *vacated on other grounds*, 601 U.S. 257 (2024) (citing SEC interpretive release regarding Regulation S-K disclosure requirements). Plaintiff need not allege that Defendants knew that Hesai had been, or would certainly be, named to the 1260H List, only that the *risk* of Hesai being named to the 1260H List, based on then-existing and known facts and laws, was a material, known risk likely to impact Hesai's business.[8]

The Complaint alleges facts existing at the time of the IPO that created this known risk. Defendants do not contest that the 2021 NDAA or Section 1260H existed at the time of the IPO,

---

is unlike *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 602 (S.D.N.Y. 2022), *aff'd sub nom. Tseng v. De Vries*, 2023 WL 8073087 (2d Cir. Nov. 21, 2023), where the offering materials sufficiently warned of the risks of Chinese e-cigarette regulations and "the prospect [of] heightened regulation" such that the risk that China would recalibrate its e-cigarette regulations was adequately disclosed, or *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39–40 (2d Cir. 2017), where "repeated warnings that its business was generally vulnerable to changing regulations, and particularly so in Hawaii" foreclosed claims of an alleged failure to warn "of the evolving regulatory regime in Hawaii."

[8] Defendants' citation to *Kwalbrun v. Glenayre Techs., Inc.*, 201 F.3d 431 (2d Cir. 1999) is inapposite as the 2021 NDAA was not a "coming [*i.e.*, future] regulation," it already existed.

including the definition of "Chinese military companies" that included "[e]ntities residing in or affiliated with a military-civil fusion enterprise zone." *See* 2021 NDAA § 1260H(d)(2)(E). Nor do Defendants contest that Hesai knew all of the relevant facts showing it resided in and/or was affiliated with military-civil fusion enterprise zones, including (for example) that it was building the Maxwell Facility in the Jiading Industrial Zone, which was a military-civil fusion enterprise zone. ¶¶76-84. Defendants likewise do not contest that Hesai knew that its LiDAR products had substantial military applications. ¶¶85-90. Those facts existed and were known to Hesai at the time of the IPO. Judge Friedman ruled that those very facts were sufficient to support the DoD's inclusion of Hesai on the 1260H List. Defendants therefore had a duty to disclose the known risk that Hesai could be named on the 1260H List. The fact that the risk did not come to fruition until after the IPO is wholly irrelevant to determining whether the risk existed at the time of the IPO and should have been disclosed.[9]

Defendants' other arguments do not hold water. Plaintiff does not allege that the Offering Documents described this risk as hypothetical when it had already materialized. That theory is sometimes alleged in other cases, but not here. Here, Plaintiff alleges that the risk of Hesai being named to the 1260H List was not disclosed *at all*, thus it is irrelevant whether or not the risk had actually materialized prior to the IPO. Defendants' argument that Plaintiff does not allege Hesai violated the NDAA is likewise inapposite. The undisclosed risk Plaintiff alleges was Hesai being named to the 1260H List, not violating the NDAA.

---

[9] *RLX*, 632 F. Supp. 3d at 605, is inapposite because at issue in *RLX* were potential **new** regulations that had not yet been enacted. Here, in contrast, Section 1260H was already in place, and Hesai's eligibility for the 1260H List was based on facts already in existence and known to Hesai (*i.e.*, the location of its manufacturing facilities and the use cases for its core products). *Grossman v. Sin*, 2025 WL 1330087, at *5 (C.D. Cal. Mar. 31, 2025) involved a company's joint venture partner being named to the Entity List (which, again, is unrelated to the 1260H List), not the company itself, thus the potential risk to the defendant company was too speculative.

21

Finally, Defendants' argument that the Chinese articles and reports cited in the Complaint concerning Hesai's facilities and the Chinese military-civil fusion enterprise zones "were reported so extensively as to have become public knowledge" or "were incorporated in the Offering Documents," Mtn. at 23, is wrong on the law and the facts. As the Complaint expressly alleges, the information in these obscure, Chinese-language news articles "was not provided in the Offering Documents and not well known to investors." ¶84. Defendants do not cite *anything* in the Offering Documents containing or incorporating this information. *See also* ¶¶68-69. This is a classic "truth-on-the-market" defense, which the Second Circuit has held "is intensely fact-specific and is rarely an appropriate basis for dismissing a [securities] complaint for failure to plead materiality." *Ganino*, 228 F.3d at 167. For Defendants to prevail on this factual defense, "the corrective information must be conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Id.* Defendants' argument has been flatly rejected in similar circumstances. As Judge Sullivan explained in *Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009), "the publication of three newspaper articles—in Chinese—does not transform the information contained within the articles into 'matters of general public knowledge'" and "do[es] not excuse Defendants, as a matter of law, from their respective duties to disclose the allegedly misleading information."[10]

### 2. The Offering Documents Omitted Known Material Risks Concerning the Potential Loss of Hesai's Largest Customer

The Offering Documents also stated that "[t]he loss of business from any of our major customers," including by "cancellation of existing contracts ... could have a material adverse effect on our business and results of operations." ¶104. This statement was misleading because it omitted

---

[10] *See also In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 687 (S.D.N.Y. 2004) (similar).

the material risk that Hesai could lose its largest customer, GM Cruise, due to Hesai's inclusion on the 1260H List. ¶105. Not only would the loss of GM Cruise deprive Hesai of the substantial revenues from its largest customer—accounting for over 20% of Hesai's revenues between 2019-2023—it would also have a material adverse impact on Hesai's margins. ¶¶105-09. Defendants also had a duty to disclose this known, material risk under Item 3. ¶¶130-31.

Defendants are wrong that the only possible impact to Hesai's U.S. customers (including GM Cruise) from being named to the 1260H List was via post-IPO NDAA provisions. The Complaint alleges that "being named on the 1260H List creates a distinct stigma for a company, particularly in the U.S. market." ¶75. Moreover, Defendant Li admitted that "being on the list did seriously impact our reputation," "impeded some business opportunities," and jeopardized customer relations. ¶144. Thus, even prior to the NDAA amendments Hesai knew that the risk of being named to the 1260H List also entailed a material risk of jeopardizing its relationship with its largest customer, GM Cruise. Again, whether or not that risk ultimately came to fruition is irrelevant to whether the risk was known and material at the time of the IPO. The Complaint alleges that it was, and thus the omission of that risk violated Defendants' duty to disclose under Item 5.

### 3. Plaintiff's Claims Regarding the 1260H List Are Not Time-Barred

Defendants assert that "Plaintiff knew or should have known of his 1260H List claim on January 31, 2024, when Hesai was first designated to the List," and thus such claims are time-barred. Mtn. at 23. Not so. As Defendants concede, when Hesai was named on the 1260H List in January 2024 (on different grounds), "Hesai immediately issued a public response, stating that it believed 'this inclusion is unjust, capricious, and meritless,'" sued the DoD for removal, and "continued to object to its inclusion on the 1260H List." Mtn. at 10. Even after Hesai was relisted in October 2024 on the grounds eventually upheld by Judge Friedman (¶156), the DoD's memorandum and evidence supporting its determination were not made public until they were

23

filed in the district court in January 2025 (DoD brief, Defendants' Ex. M) and February 2025 (joint appendix containing DoD memorandum, Defendants' Ex. L). *Hesai Tech. Co., v. DOD*, No. 25-5256 (D.C. Cir.) (Dkt. Nos. 47 and 53). Even the grounds upon which the DoD relisted Hesai were not public until Hesai's amended complaint was filed on November 15, 2024 (*id.*, Dkt. No. 41).

The statute of limitations "does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). Here, the facts supporting Plaintiff's claim—the location of Hesai's facilities in Chinese military-civil fusion enterprise zones and the fact that the DoD named Hesai to the 1260H List on that basis—were not reasonably discoverable until Plaintiff reviewed the relevant court documents, which were filed less than one year before the Complaint. The mere fact that Hesai was named to the 1260H List in January 2024 on other grounds was not "facts constituting the violation" of Section 11 that Plaintiff alleges. *Id.; see also Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 566 (S.D.N.Y. 2012) ("investors were not on inquiry notice of the alleged misrepresentations until ... DYP's accounting issues were made public."). Plaintiff's claims based on Hesai's inclusion on the 1260H List are thus timely.

Alternatively, Plaintiff's claims relate back to the original complaint (which Defendants do not contest was timely) because the allegations are related to the original complaint. An amended pleading relates back when the claim at issue "arose out of the conduct, transaction, or occurrences set forth ... in the original pleading." Fed. R. Civ. P. 15(c)(2). Where no new cause of action is alleged, as is the case here, relation back under Rule 15 is to be liberally granted. *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 87 (2d Cir. 1999). The allegations here concern statements and omissions in the same documents (the Offering Documents) and include allegations of a material

24

undisclosed risk to Hesai's gross margins, specifically from the potential loss of its largest customer due to Hesai being named to the 1260H List. ¶¶105-09.

### D. Defendant DeVries is Liable Under Section 11

Defendants assert that DeVries did not "personally sign[]" the Registration Statement "in her individual capacity" and thus cannot be liable under Section 11. Mtn. at 24.[11] They are wrong. Section 11 clearly defines "persons liable" to include "every person who signed the registration statement." 15 U.S.C. § 77k(a)(1). The court in *Wang*, 661 F. Supp. 3d at 238, rejected this exact same argument from the same Defendants in the same context. This Court must do the same.

### E. The Complaint Adequately Alleges Control Person Liability Under Section 15 of the Securities Act

"To establish § 15 liability, a plaintiff must show a primary violation of § 11 and control of the primary violator by defendants." *In re Lehman Bros. Mortgage–Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011). The "primary violation" element is satisfied here because Plaintiff has adequately alleged Hesai's violation of Section 11, as detailed above. Defendants do not challenge the adequacy of Plaintiff's Section 15 allegations on any other grounds. Mtn at 24 n.6. The Complaint thus adequately alleges claims under Section 15.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion must be denied.

---

[11] *In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 1881514, at *11 (S.D.N.Y. Aug. 5, 2005), held only that a separate company that appointed a director who signed a registration statement is not liable under Section 11 based on the director's signature where there was no showing that the director had signed as the company's agent.

25

Respectfully submitted,

Dated: January 16, 2026                **THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Phillip Kim
Joshua Baker
Jing Chen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         jbaker@rosenlegal.com
         jchen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

26

**WORD COUNT CERTIFICATION**

I hereby certify that this Memorandum of Law complies with the word count limit set forth in Local Civil Rule 7.1(c). The total number of words in this document, based on the word count function of the word-processing system used to prepare the document, exclusive of the caption, table of contents, table of authorities, and signature block, is 8,414 words.

Dated: January 16, 2026                      */s/Joshua Baker*
                                              Joshua Baker

27