UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALAN PACELLA, Individually and on behalf : 
of all others similarly situated,

                               Plaintiff,

                    - against -

HESAI GROUP, YIFAN LI, LOUIS T.
HSIEH, KAI SUN, SHAOQING XIANG,
CAILIAN YANG, COLLEEN A. DEVRIES,
GOLDMAN SACHS (ASIA) L.L.C.,
MORGAN STANLEY ASIA LIMITED,
CREDIT SUISSE SECURITIES (USA) LLC,
HUATAI SECURITIES (USA), INC.,
COGENCY GLOBAL, INC.,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

1:24-cv-00876-CM

**Oral Argument Requested**

 

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF <u>THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT</u>

O'MELVENY & MYERS LLP

Jonathan Rosenberg
Abby F. Rudzin
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000

*Counsel for Defendants Goldman Sachs
(Asia) L.L.C., Morgan Stanley Asia Limited,
Credit Suisse Securities (USA) LLC, and
Huatai Securities (USA), Inc.*

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Counsel for Hesai Group, Cogency Global,
Inc., and Colleen A. DeVries*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT.........................................................................................................................2

I.   PLAINTIFF ABANDONS HIS SECTION 12(A)(2) CLAIM .................................................2

II.  PLAINTIFF STILL FAILS TO PLEAD ANY MISSTATEMENT OR OMISSION ...............2

     A.  No Material Misstatement or Omission About Gross Margin.......................................2

     B.  No Material Misstatement or Omission Regarding the 1260H List .............................6

III. PLAINTIFF'S 1260H LIST CLAIM IS TIME-BARRED.........................................................9

CONCLUSION....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*In re American International Group, Inc. 2008 Securities Litigation*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010)........................................................................5

*Bettis v. Aixtron SE*,
No. 16 Civ. 00025 (CM), 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016)...........................8

*Bresson v. Thomson McKinnon Securities, Inc.*,
641 F. Supp. 338 (S.D.N.Y. 1986) ..........................................................................9

*In re Facebook, Inc. IPO Securities & Derivative Litigation*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013)........................................................................5

*Goldsmith v. Weibo Corp.*,
Civil Action No. 17–4728 (SRC), 2018 WL 2733694 (D.N.J. June 7, 2018) ....................3

*In re Magnum Hunter Resources Corp. Securities Litigation*,
616 F. App'x 442 (2d Cir. 2015) ..............................................................................9

*Maroney v. Woodstream Corp.*,
695 F. Supp. 3d 448 (S.D.N.Y. 2023).....................................................................2, 6

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022,
*vacated and remanded sub nom. Macquarie Infrastructure Corp. v. Moab
Partners, L.P.*, 601 U.S. 257 (2024))........................................................................7

*NECA-IBEW Pension Trust Fund v. Lewis*,
607 F. App'x 79 (2d Cir. 2015) ...............................................................................9

*In re Noah Educational Holdings, Ltd. Securities Litigation*,
No. 08 Civ. 9203(RJS), 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ..........................10

*In re Qudian Inc. Securities Litigation*,
No. 17-CV-9741 (JMF), 2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ...........................8

*Stevelman v. Alias Research Inc.*,
174 F.3d 79 (2d Cir. 1999)....................................................................................10

*In re TVIX Securities Litigation*,
25 F. Supp. 3d 444 (S.D.N.Y. 2014),
*aff'd sub nom. Elite Aviation v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014)...........4

*Wang v. Cloopen Group Holding Ltd.*,
    661 F. Supp. 3d 208 (S.D.N.Y. 2023)..........................................................................5, 10

*Yaroni v. Pintec Technology Holdings Ltd.*,
    600 F. Supp. 3d 385 (S.D.N.Y. 2022)..................................................................................9

## PRELIMINARY STATEMENT

Unable to deny the robust disclosures and dispositive facts alleged in his own Complaint, Plaintiff abandons several claims, ignores arguments raised in the Motion to Dismiss, and relies on premises that fall apart in the face of the Offering Documents' actual disclosures. The Opposition confirms that Plaintiff's claims should be dismissed in their entirety with prejudice.[1]

First, Plaintiff has abandoned his Section 12(a)(2) claims, because the Opposition fails to respond to the argument that Plaintiff lacks standing for those claims.

Second, Plaintiff still fails to identify any material misstatement or omission. Plaintiff's gross margin claim is flatly belied by Hesai's disclosures. The Offering Documents warned of the precise risks Plaintiff claims were omitted, including that Hesai's gross margin had declined and would continue to decline as it ramped up production of ADAS products. Plaintiff's other claim that Defendants failed to disclose that Hesai could be named to the DoD's 1260H List ***nearly a year after the IPO*** also fails, as he alleges no facts showing that Defendants knew of this risk or believed it to be material at the time of the IPO, while the Offering Documents nevertheless warned extensively of potential future regulatory action in light of rising U.S.-China political tensions.

Finally, Plaintiff's 1260H claim is also time-barred by the Securities Act's one-year statute of limitations. When the DoD named Hesai to the 1260H List in January 2024, a reasonable investor would have discovered the very facts and information alleged in the Complaint. Because Plaintiff waited ***nearly two years*** to file this new claim, it is untimely. And because it is based on different conduct and underlying facts than his original complaint, it does not relate back.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss, ECF No. 40 ("Opening Brief" or "Br"). "Opposition" or "Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 44.

## ARGUMENT

### I.    PLAINTIFF ABANDONS HIS SECTION 12(a)(2) CLAIM

Plaintiff forfeited his Section 12(a)(2) claims by not responding to Defendants' argument that he lacks Section 12(a)(2) standing.  *See Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 468 (S.D.N.Y. 2023) ("In the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss constitute[s] an abandonment of those claims.").

### II.    PLAINTIFF STILL FAILS TO PLEAD ANY MISSTATEMENT OR OMISSION

#### A.    No Material Misstatement or Omission About Gross Margin

As detailed at length in the Opening Brief, the Offering Documents contain extensive and unambiguous disclosures that warned of the precise risk Plaintiff claims was omitted—that gross margins would further decrease as Hesai increased shipments of ADAS products.  (Br. at 12-14.) Hesai disclosed, among other things, that it "*expects its gross margin to further decrease in the fourth quarter of 2022 as it shifts its product mix toward LiDAR products for the ADAS market*" (AC ¶ 95), and it "*expect[s] . . . [its] gross margin to decrease as [its] shipment volume increases, especially with the increasing shipment of LiDAR units for the ADAS market*" (*id.* ¶ 97).

Unable to deny these disclosures, the Opposition relies on a faulty premise that is rendered nonsensical by the Offering Documents' plain language.  Plaintiff contends that any reference in the Offering Documents to a gross margin decrease implied only low-margin *Autonomous Mobility* LiDAR units, not low-margin ADAS LiDAR units.  (Opp. at 9.)  His claim is not based on an affirmative statement, but on an allegedly "false impression" Plaintiff attempts to draw from the use of "identical language to explain the decrease in gross margin" from 2020 to 2021 and from the first nine months of 2021 to the first nine months of 2022.  (*Id.* at 10.)  Plaintiff argues that because Hesai only sold Autonomous Mobility products in 2020 and 2021, its statements that gross margin decreased "primarily due to the increased sales of LiDAR units that have lower

margins" could "refer[] only to its sales of relatively lower-margin Autonomous Mobility units" in both periods.  (Opp. at 10.)  But the language he points to *does not mention* Autonomous Mobility, and Plaintiff fails to explain why a statement generally referring to "LiDAR units that have lower margins" could not refer to *both* Autonomous Mobility and ADAS LiDAR units after Hesai began selling ADAS LiDAR products in July 2022.  (*See* AC ¶ 101.)

In any event, "Plaintiff's theory fails because the implication at the core of the securities . . . claim is not based on a plausible reading of" the Offering Documents.  *Goldsmith v. Weibo Corp.*, 2018 WL 2733694, at *8-10 (D.N.J. June 7, 2018) (dismissing securities claim based on "false impression" from "juxtaposition of two statements").  The Opposition is replete with internally inconsistent assertions that cannot be squared with the actual disclosures.  Plaintiff argues, for example, that "the Offering Documents misleadingly conveyed only that Hesai's 4Q22 gross margin would continue the ongoing modest decline *due to shrinking margins for the Autonomous Mobility units*."  (Opp. at 9.)  This is flatly contradicted by the disclosures, which attributed the Q4 2022 decline not to Autonomous Mobility LiDAR products, but to Hesai's "shift [in] product mix toward LiDAR products *for the ADAS market*."  (AC ¶ 95.)  Plaintiff also asserts that Defendants somehow conveyed that gross margin would continue to decrease "only until ADAS production ramped up enough to sufficiently *counteract* that trend" and that "ramping up ADAS production would *ameliorate* the ongoing downward trend."  (Opp. at 9-10.)  But the disclosures state the opposite, warning that Hesai "expect[s] . . . gross margin to decrease as [its] shipment volume increases, *especially with the increasing shipment of LiDAR units for the ADAS market*." (AC ¶ 97.)  Plaintiff's proffered inference is further refuted by disclosed results for Q3 2022, which show that the gross margin decline *accelerated* in the first full quarter of ADAS sales, from approximately 50% in the four quarters prior, to 37.06% in Q3 2022.  (Br. at 14.)  Plaintiff bases

3

his claim—that ADAS production would eventually curb the decline—on speculative inferences regarding "economies of scale" (Opp. at 11), but the cited disclosures are silent on this topic. (*See* AC ¶ 96 (Hesai's ability "to organically and rapidly grow its business"); *id.* ¶ 97 (average selling price); *id.* ¶ 58 (plans for new Jiading facility to "ramp-up" production of "existing and future" products).) *See In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 455 (S.D.N.Y.) ("In determining whether the statements . . . are materially misleading, the [Offering Documents] must be read as a whole.").

Plaintiff's semantic argument that Hesai's risk disclosures "denote only concurrency, not causation" between declining gross margin and ADAS sales is unavailing. (Opp. 11.) First, the words "as" and "with" can also be used to indicate causation. *As*, Merriam-Webster's Dictionary ("for the reason that: because, since"); *With*, Merriam-Webster's Dictionary ("by means of; because of"). Second, the causal relationship is evident from the context of the disclosures, which both attribute gross margin declines to increasing ADAS shipments. (AC ¶¶ 95, 97.) Third, even assuming *arguendo* that the terms only suggest a correlation between the gross-margin declining trend and ADAS sales, that was sufficient to convey to investors the information Plaintiff claims is omitted—that "[a]s Hesai ramped up its ADAS business, its gross margin would . . . decreas[e] even faster." (Opp. at 12.)

The Opposition complains that Hesai should have disclosed the "gaping margin disparity" between ADAS and Autonomous Mobility, but Plaintiff cites no duty to break down margins by product type. (Opp. at 12; *see also* Br. at 15.) Plaintiff alleges only that Defendants had a duty to disclose that "ADAS margins would have an increasing negative impact on Hesai's *overall margin* as ADAS volumes expanded." (Opp. at 17.) But again, this was disclosed. The Offering Documents stated that the Company "***expects . . . [its] gross margin to decrease*** as [its] shipment volume increases, especially with the increasing shipment of ***LiDAR units for the ADAS market***."

(AC ¶ 97.)  The Company also disclosed a quarterly breakdown of gross margins, which showed that the rate of gross margin decline had accelerated in Q3 2022, the first full quarter in which Hesai sold ADAS products.  Specifically, while Hesai's gross margin hovered at around 50% from Q2 2021 to Q2 2022, it decreased precipitously to 37.06% in Q3 2022—a nearly 21% decrease compared to the prior quarter.[2]  (*See* Br. at 5.)  Because the allegedly material "trend" in overall gross margin was disclosed, Hesai had no duty to disclose a further breakdown by product type, which Plaintiff admits was material only insofar as it would alert investors to the overall trend.  (Opp. at 12, 16-17.)  For the same reason, Plaintiff also fails to state an Item 5(D) violation.

Plaintiff has no answer to Defendants' showing in the Opening Brief that the Complaint's remaining gross margin allegations fail.  Plaintiff argues that Hesai "misleadingly attributed the predicted decline in gross margin only to the 'much lower selling prices'" (Opp. at 13), ignoring that the disclosure he cites says nothing of the sort (Br. at 14 n.4).  Plaintiff also fails to respond to the point in the Opening Brief that the disclosure he characterizes as misleadingly "hypothetical" is not misleading in light of the extensive disclosures of an ***ongoing*** decrease.  (Opp. at 13-14; Br. at 15.)  As to the challenged statements of puffery, Plaintiff fails to plead that Hesai's margins were no longer "industry-leading," even with the declining trend, or that Hesai had lost its "global leadership" position.  (Opp. at 14-15.)  To the contrary, after Hesai disclosed its Q4 and FY 2022 financial results, Hesai's then-CFO noted that the Company's 39.2% gross margin for FY 2022 was still "the highest among [its] industry peers"—a statement Plaintiff does not allege was false.

---

[2]   Investors here were thus on notice of the "magnitude of the risks described," contrary to the investors in Plaintiff's cases.  *In re Am. Int'l Grp., Inc. (AIG) 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 515 (S.D.N.Y. 2013) ("specific risk disclosures" misleading "if the risks are … significantly greater or more certain than those portrayed…."); *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 232 (S.D.N.Y. 2023) (Defendant failed to warn of "material accelerations of [disclosed] trends, which were inconsistent" with representations of stability.).

(Ex. C, Mar. 2023 Form 6-K.)  And Plaintiff does not dispute that Hesai was not required to disclose Q4 2022 results before they were finalized.  (Opp. at 17.)

### B.      No Material Misstatement or Omission Regarding the 1260H List

Plaintiff's second—and equally deficient—theory of liability is that Hesai failed to disclose its eligibility for the DoD's 1260H List.  But Plaintiff alleges no facts showing Hesai knew at the time of the IPO that it was at risk of being named to the 1260H List or that such a designation would be material.  (Br. at 20-21.)  The Opposition argues that Hesai knew it was building a facility in the Jiading Industrial Zone.  (Opp. at 21.)  But Plaintiff misses the point.  While the location of Hesai's facilities is undisputed—indeed, this was disclosed in the Offering Documents (Ex. B at 33, 37, 81, 119)—Plaintiff's claim fails because he does not (and cannot) dispute that Hesai did not and could not know that the DoD would *later* classify these locations as "military-civil fusion enterprise zones."  The NDAA does not define or list "military-civil fusion enterprise zones."  (Br. at 9, 20.)  Nor does Plaintiff allege that the DoD had identified these areas as "military-civil fusion enterprise zones" at the time of the IPO.  In fact, the DoD did not even find that Hesai operated in such a zone when it first listed Hesai, and instead made that finding "based on the latest information available" in October 2024—*twenty months after the IPO*.  (*Id*. at 10-11, 21.)  Plaintiff does not explain how Hesai (or anyone) could have known that its facilities were located in "military-civil fusion enterprise zones" before the DoD designated those areas as such.  (*Id*. at 11.)[3]

Compounding the hindsight nature of his claim, Plaintiff also does not dispute that the NDAA provisions that could affect Hesai's business with its U.S. customers were not enacted until December 2023, *nearly a year after the IPO*.  (Br. at 22-23.)  Plaintiff asserts that the "stigma" of

---

[3]    Plaintiff does not dispute that having "substantial military applications" (Opp. at 21) is not a basis for designation under the NDAA (*see* Br. at 21 n.5).  Plaintiff also abandons his allegations regarding Blue Orca.  (*See* Br. at 21.)  *See also Maroney*, 695 F. Supp. 3d at 468.

6

the 1260H designation "entailed a material risk of jeopardizing [Hesai's] relationship with its largest customer." (Opp. at 23.)  But he bases this conclusory assertion only on an August 2024 statement by Defendant Li long *after* the IPO, *after* the new NDAA provisions were enacted, and *after* Hesai was named to the 1260H List.  (*Id.*)  This provides no basis to infer that Defendants believed as of the IPO that the possibility of being named to the 1260H posed a material risk.

Because the designation was not a known material risk and the statutory provision allegedly affecting Hesai's relationship with its U.S. customers did not exist at the time of the IPO, there is no violation of Item 3.  *See Moab Partners, L.P. v. Macquarie Infrastructure Corp.,* 2022 WL 17815767, at *2 (2d Cir. Dec. 20, 2022) (disclosure required only if an "uncertainty is known"), *vacated and remanded*, 601 U.S. 257 (2024).  Nor was disclosure required to make Hesai's other disclosures not misleading.  Plaintiff asserts that such disclosures were misleading only insofar as they failed to "apprise[] investors of the specific, *known* risk" of being named to the 1260H List and the "*known*, material risk" of losing customers or business as a result.  (Opp. at 19-20, 23.)  Plaintiff's failure to plead contemporaneous knowledge thus defeats this claim.

In any event, Hesai's exhaustive, specific disclosures in the Offering Documents readily apprised investors of then-existing regulatory and geopolitical risks.  Hesai specifically warned, for example, that (i) its technologies "could be subject to restrictions by the U.S. government in the future"; (ii) its business and customer relationships could be harmed by "new tariffs, legislation, or regulations"; and (iii) Hesai was "subject to trade restrictions, including economic sanctions and export control." (Br. at 18-19.)  Plaintiff's attempts to brush these disclosures aside by cherry-picking statements fail.  (Opp. at 18-19.)  His selective critique ignores the robust warnings—spanning three single-spaced pages—that addressed the exact risk that later materialized.  The Opposition falsely claims that "*new* tariffs, legislation, or regulations" and

7

"restrictions by the U.S. government *in the future*" "have nothing to do with the 1260H List" because Section 1260H was part of an existing law.  (Opp. at 18-19.)  This ignores the fact that Hesai's Section 1260H designation itself was a *future regulatory action* to which the warnings directly apply.  Similarly, Plaintiff's myopic focus on discrete terms in the risk warnings such as "export control," "trade restriction," and the "Entity List" ignores the broader regulatory context in which Hesai's risk disclosures must be read.  (Opp. at 18-20.)  Plaintiff acknowledges that the risk disclosure is titled "[t]he current tensions in international trade and rising political tensions, particularly between the United States and China, may adversely impact our business, financial conditions, and results of operations."  (Ex. B at 29.)  Plaintiff's mischaracterization of the regulatory risks as only "trade-oriented" simply does not square with the broad scope of the risk disclosures.  (Opp. at 19.)  When viewed together and in context, these disclosures were sufficient to warn investors of the present risks likely to impact its business.

Finally, Plaintiff ignores that the Offering Documents repeatedly disclosed that Hesai was building a facility in Jiading.  (*See* Ex. B at 33, 37, 81, 119.)  Plaintiff derides the Chinese-language news articles cited in his own Complaint as "obscure" and "not well known to investors," (Opp. at 22), but those publications merely elaborated on facts disclosed in the Offerings Documents. Contrary to Plaintiff's claims, courts have repeatedly found that information disclosed in Chinese news articles is in the mix of public information.  *See, e.g.*, *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) (finding information reflected in Chinese newspaper articles "publicly known"); *Bettis v. Aixtron SE*, 2016 WL 7468194, at *12–13 (S.D.N.Y. Dec. 20, 2016) (PRC government's decision was public even though reported only in Asia-based industry and region-specific publications).  Because the statutory criteria for 1260H List designation are also public, Hesai had no greater access to information about the alleged risk than Plaintiff.

8

### III.    PLAINTIFF'S 1260H LIST CLAIM IS TIME-BARRED

Plaintiff argues that the January 2024 DoD designation did not trigger the Securities Act's one-year statute of limitations because (i) he also needed to know the underlying facts on which DoD relied in assessing whether those facts existed at the time of the IPO and (ii) the DoD's bases were not reasonably discoverable until they were disclosed in "relevant court documents" filed less than one year before the Complaint.  (Opp. at 24.)  As a threshold matter, the Complaint ***does not even mention*** these court documents, let alone allege that they put Plaintiff on notice of his claim.  Plaintiff cannot rely on disclosures alleged for the first time in the Opposition to toll the limitations period.  *See Bresson v. Thomson McKinnon Sec., Inc.*, 641 F. Supp. 338, 343 (S.D.N.Y. 1986) ("[P]laintiffs must affirmatively plead sufficient facts to demonstrate that the requirements of section 13 have been satisfied; otherwise their claims are subject to dismissal.").

Plaintiff's "own allegations demonstrate that a reasonably diligent plaintiff would have had sufficient information to plead the asserted Securities Act [claim] by" January 2024.  *NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015).  A reasonably diligent plaintiff conducting a timely investigation would have immediately uncovered the facts supporting the DoD's January 2024 designation from the very articles and reports the Complaint cites.  (AC ¶¶ 77–79, 81.)  Moreover, the DoD's bases were also reasonably discoverable when its original decision for the January 2024 designation was made public via a court document filed on September 9, 2024—over a year before the Complaint was filed in November 2025.  (*See* Ex. F, DoD 2023 Memorandum.)  Although the DoD later provided a different rationale when it relisted Hesai in October 2024 (which likewise was more than a year before the Complaint was filed), "[t]o trigger the statute of limitations, disclosures do not have to perfectly match the allegations that a plaintiff chooses to include in its complaint." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 399 (S.D.N.Y. 2022); *accord In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x

9

442, 447 (2d Cir. 2015) ("[W]e have never permitted the statute of limitations to be tolled until [the corrective] disclosures touch on every specific allegation that a plaintiff chooses to put in his complaint."). Because a reasonably diligent plaintiff would have discovered this claim over a year before the Complaint was filed, Plaintiff's claim is time-barred.

Plaintiff's claim does not relate back to the original complaint. Unable to dispute that the DoD claim does not relate to the same "conduct, transaction, or occurrences" in the original complaint, Plaintiff argues that his new claims—based on a separate set of facts, alleged misstatements and omissions, and post-IPO developments—should relate back because they arise out of the same Offering Documents and generally impact the same financials. (Opp. at 24.) But "[t]his proposition—that once a Plaintiff has complained of one false or misleading statement in offering documents within the limitations period[,] *any* future allegations that other statements were false or misleading may relate back—is untenable." *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010). Plaintiff also has no answer to the controlling Second Circuit authority cited in the Opening Brief affirming the dismissal on statute-of-limitations grounds of late-filed Securities Act claims based on a distinct set of alleged misleading statements. (Br. at 23–24.) Plaintiff's cited authority is not to the contrary. *See Stevelman v. Alias Rsch. Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) (amended claims relate back when they contain "substantially the same allegations . . . with added specificity").[4]

## **CONCLUSION**

The Amended Complaint should be dismissed in its entirety with prejudice.

---

[4] Plaintiff's Section 11 claim against Ms. De Vries should be dismissed. (Br. at 24.) *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 238 (S.D.N.Y. 2023) is inapposite because unlike here, defendants cited no authority in support of their claim. Because Plaintiff fails to plead primary liability, his Section 15 claim for control person liability also fails. (Br. at 25.)

10

Dated: New York, New York
      January 27, 2026

Respectfully submitted,

/s/ Michael C. Griffin
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Hesai Group, Cogency Global,
Inc. and Colleen A. DeVries*


/s/ Jonathan Rosenberg
O'MELVENY & MYERS LLP
Jonathan Rosenberg
Abby F. Rudzin
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone:    (212) 326-2000
jrosenberg@omm.com
arudzin@omm.com

*Counsel for Defendants Goldman Sachs
(Asia) L.L.C., Morgan Stanley Asia Limited,
Credit Suisse Securities (USA) LLC, and
Huatai Securities (USA), Inc.*
